## SNOW v. FLANNERY.

1. CONTRACTS TO CONVEY: PRE-EMPTION. S. and F. settled upon different parts of the same quarter section of public land, before survey, and both filed pre-emption claims upon the entire tract. Each remaining in possession of his claim. As the quarter was not sub-divided and could not be entered in parts, S. proposed to pay to F. his share of the entrance money and withdraw his filing, if F. would enter the entire quarter and convey to him his share. F. declined making a positive agreement before taking the pre-emption oath, but said he did not want S's. land and would do what was right about it. S. withdrew his filing and F. entered the entire tract. S. then tendered the value of his portion of the tract, and demanded a conveyance. *held*, that it was a contract to convey which a court of equity should enforce. Such a contract violates neither the spirit nor the letter of

the Act of Congress of September 4th, 1841, prohibiting the assignment or transfer of pre-emption rights before entry.

2. FRAUD.  In a proceeding to enforce the specific performance of a contract, a party will not be permitted to set up his own fraud as a defense.

*Appeal from Fremont District Court.*

THURSDAY, APRIL 5.

THIS was a proceeding in chancery to compel the specific performance of a contract.  The complainant, in his bill, represents that in the year 1850, he purchased a claim upon the lands; that he, with his family, lived thereon, and cultivated and improved the same ; that at the time he purchased said claim the land was unsurveyed by the United States; that when said lands were surveyed the claim of petitioner proved to be upon the south half of the north-east quarter of section number ten, township sixty-nine, range seventy-three west ; that some time after such survey the defendant, Flannery, acquired a claim for the north half of said quarter section; that both plaintiff and defendant filed in the land office of the United States a pre-emption on the whole of said quarter; that said quarter being fractional, contained no smaller sub-division by such survey, and that the whole quarter could only be entered by one pre-emptor ; that the defendant, Flannery, agreed to pre-empt the same, and to convey to plaintiff that portion of the said quarter which embraced the claim of plaintiff; that the defendant after having entered the same refused to convey.   In the District Court a decree was rendered for plaintiff, from which defendant appeals.

*O. P. Mason* and *A. G. Corwin* for appellants.

I. The contract disclosed by the evidence is too vague and uncertain to be enforced specifically by a court of equity. *Colson* v. *Thompson,* 2 Wheat. U. S. 336; 14 Pet. 77; *Seymour* v. *Delavey,* 3 Cow. 446, 505; 1 Eq. Lead. C., note 581.

II. The facts can not be construed as creating a resulting trust, or trust by implication of law. The defendant has paid no money and can not show by parol evidence that the purchase was made for his benefit. *Irvin* v. *Iver*, 7 Ind. 308; 4 Black. 539; 2 John. Ch. R. 406; Perkins Dig. 775, Code 190.

III. The statute of frauds requires that all contracts for the transfer of any interest in lands, excepting leases for a term of one year, shall be in writing. Code, p. 325; 2 Wheat. 336; 14 Pet. 77.

IV. The alleged contract was in violation of section 12 of the Act of Congress of September 4th, 1841, and was null and void. Dun. L. U. S. 990; Bri. Dig. 573, section 85; 1 Ind. R. 247; 3 Ib. 434; 5 Black. 63; Story Cont. Sec. 486, 613 *et seq.*; 1 Par. Con. 380; Chit. Cont. 601, 9th vol.; 2 Par Con. 186.

*Rector & Harvey* for the appellees.

I. The evidence shows that the contract sought to be enforced was made in accordance with a neighborhood custom relating to claims, pre-emptions and entries. Such custom must be considered in construing the contract. 2 Par. Cont. 50 note.

II. Promises must be construed in the sense in which the promisor believed the promisee understood them. Smith Cont. 432.

III. The object of the Act of Congress of September 4th, 1841, was to prohibit the sale of the right of pre-emption, and not the transfer or sale of land after it has been pre-empted. In other words, the restriction is upon "contracts to convey before the patent is issued," and not upon contracts to convey after it it is issued. Bright. Dig. 470, 472, 475; 20 How. 504.

IV. No attempt is being made to set aside Flannery's title, and he can not impeach it collaterally by showing that he acquired it by fraud. 2 G. Greene 82; 2 Iowa 15.

V. Flannery can take no advantage of his own fraud to defeat Snow's action to enforce the contract.

BALDWIN, J.—The appellant insists that the District Court erred in rendering a decree for plaintiff; 1st, for the reason that there was not sufficient evidence to justify the court in concluding that defendant had ever agreed to convey; 2d, that if any such contract to convey ever was made, it was in contravention of the laws of the United States, and therefore void.

The pleadings and the evidence, as admitted, show substantially the following state of facts: That the plaintiff, some years previous to a survey by the government, purchased a claim in Fremont county, in a neighborhood in which there was then quite a number of settlers upon the public lands, whose farms were designated by claim lines, all of whom, as was the custom of the early settlers upon the public lands, recognized such claim lines and respected the rights of the occupants thereon; that the plaintiff continued in possession of said claim, living on the same with his family, cultivating and making valuable improvements thereon; that after the lands were surveyed by the United States, the claim of plaintiff proved to be upon the south half of the fractional quarter section of land as above described, and that the quarter was not subdivided by the government; that defendant some time in the year 1853 purchased a claim upon the north half of said quarter, lived upon the same with his family, and cultivated and improved it; that said quarter, under the laws of the United States, could not be entered in parts, but must be entered as a whole; that defendant, Flannery, upon the 11th day of May, 1853, filed a pre-emption upon said quarter, that defendant had also previous to that date, filed upon the same quarter; that before and after such filing both plaintiff and defendant continued to recognize each other's rights as claimants, upon said quarter; that a certain line was regarded as a dividing line between their respective

claims; that at one time after the parties were thus living upon their claims, a controversy arose in regard to the line between plaintiff and defendant, and one Fielding Snow who occupied an adjoining claim; that parties agreed to submit the controversy to arbitrators; that at such arbitration both plaintiff and defendant were present; that the arbitrators established a certain line between the claims of plaintiff and defendant, giving the south half of said quarter to plaintiff, and the north half to defendant, that both parties at that time expressed themselves satisfied with the award, both continuing to occupy their claims up to the time of the commencement of this suit; that upon the 18th day of June, 1856, the parties were both present at the land office of the United States, for the purpose of entering said land; that plaintiff would not withdraw his pre-emption, and allow defendant to prove up and enter said quarter unless defendant would agree to convey to plaintiff his portion of the same, but proposed to withdraw his filing if defendant would so convey. Plaintiff at the same time proposed to furnish the money to pay for his part of said land at the rate of one dollar and twenty-five cents per acre. To this proposition defendant replied that he, defendant, could not make any such contract; at the same time defendant replied that Snow was a poor man, that he did not want his land, that all he wanted was his own—that if Snow would withdraw his filing and allow defendant to pre-empt, that he, defendant, would do what was right. Under this agreement, Snow withdrew his filing, and Flannery immediately entered the whole quarter. It also appears from the evidence that plaintiff tendered to defendant a sufficient amount of money to pay for that portion of the claim of plaintiff, at $1.25 per acre, and demanded a deed therefor.

This is the evidence relied upon by the plaintiff to establish a contract by defendant to convey, and which defendant urges before this court as insufficient to justify the conclusion that defendant ever did so agree to convey.

There was a distinct proposition made by plaintiff that if

defendant would convey to him his portion of the land in controversy, plaintiff would furnish his portion of the entrance money and also withdraw his filing and let defendant pre-empt. All of the facts established by plaintiff in reference to this tract of land, the improvements of each other thereon, the recognition of the claim lines for a number of years, the custom of the neighborhood, the rights of the claimants upon the public lands, the anxiety of both plaintiff and defendant to secure their own claims, enter into and become a part of this contract, and were well understood by defendant when he said he did not want plaintiff's land, that he was a poor man, and he (defendant) would do what was right. In what sense could plaintiff have understood this proposition other than an agreement to convey? Had he not reasons to suppose when he thus placed his all in the power of defendant; that defendant would do what was right? "That sense is to prevail against either party in which he had reason to suppose the other understood it." Section 2401, Code. Flannery certainly knew that Snow understood from this agreement that he was to have his claim deeded to him, as that was the only way he could do right with him. The court did not err in finding that there was such an agreement upon the part of defendant as should be enforced by a court of equity.

It is urged by appellant that if such contract was ever made, that it was in violation of the Act of Congress of September 4th, 1841, which declares that "all assignments and transfers of the right hereby secured prior to the issuing of the patent shall be null and void."

It was the evident design of Congress, in the passage of this act, and of all acts upon the subject, to protect the rights of the *bona fide* settlers upon the public lands, and to prevent those who did not wish to enjoy this privilege from speculating upon this bounty offered by the government to the settler in good faith. It is the right thus given to the settler, the transfer of which is prohibited. After the title papers from the government to the pre-emptor, the govern-

ment has no control over the same. The pre-emptor has paid his money for the land, the title of the government therein is extinct, and the purchaser has a right to sell or dispose of the same as he may see fit. The plaintiff and defendant were both settlers upon the public lands, improving and living thereon—the very class of settlers that Congress by this law intended to benefit and protect—the class of persons who undergo the hardships of a frontier settlement; who from necessity have to settle upon lands, the title to which they cannot at the time acquire, and whose rights at all times should be regarded and protected, especially as against that class of persons who seek to commit the greatest outrage against such claimants, by obtaining from the government the title to the lands upon which such claims are situated. A contract made before the issuing of the patent to convey after, does not violate the letter or spirit of the law so as to invalidate the contract between the parties. They were so situated that one must enter and convey to the other, so that both could have the benefit of their respective claims. If such contract, however, was in violation of law, the defendant was the party who committed the wrong, the government was the only party wronged, the only party that could take advantage of the wrong thus committed; and in this proceeding this question can not be inquired into. It can not be determined in this proceeding whether the defendant did obtain the title to this land by making false representations at the time of his entry. This question can not be thus collaterally inquired into. The plaintiff did not violate any law by his contract with the defendant and we think defendant should not be allowed to set up his wrongful act in bar of the plaintiff's rights.

The decree of the District Court is affirmed.