## OAKS V. HEATON ET AL.

1. **Public Lands:** HOMESTEAD ACT: CONTRACT. An occupier of land under the Homestead Act of 1862 cannot make a valid contract that he will convey the land when he shall have acquired the legal title thereto.

2. ———: RULE APPLIED. O. had pre-empted a quarter section of Government land, and had made valuable improvements thereon, when he agreed with H. that if the latter would take possession and perfect a title under the Homestead Act, he would relinquish his rights already acquired, and should receive in consideration therefor a deed to half of the land when the title should be perfected: *Held*, that the agreement was in violation of the provisions of the Homestead Act of the United States, and could not be enforced.

*Appeal from Plymouth Circuit Court.*

THURSDAY, OCTOBER 5.

THE plaintiff alleges in his petition in substance that on the 5th day of July, 1870, he held a valid claim under the pre-emption laws of the United States, and under the laws of Iowa, to the south-east quarter of section number thirty-six, in township number ninety-two, of range forty-eight, and was then, and from about April 1, 1870, had been, in possession of and residing on the same; and had erected a good, substantial dwelling house, and made valuable improvements thereon, amounting in value to over five hundred dollars. That on or about said fifth day of July, at the solicitation of the defendant, Lucius R. Heaton, plaintiff was induced to sell to the said Lucius R. Heaton plaintiff's claims to and interest in said land upon the following terms: Plaintiff agreed to relinquish his pre-emption right to said land, and Lucius R. Heaton agreed to take and hold the same and perfect his title thereto, under the homestead laws of the United States, and when he had thus perfected his title to said land to convey to plaintiff by a good and sufficient deed, the west half of said quarter section. That plaintiff in the meantime continued, and still continues, in the possession of the west half of said land. That, in accordance with said agreement, plaintiff

relinquished his pre-emption claim to said quarter section, and Lucius R. Heaton entered the same under the homestead laws of the United States, and went into the occupancy and possession of the east half of said quarter section.

That, for the purpose of more fully carrying out said agreement and reducing it to writing, so far as could reasonably be done, the said Lucius R. Heaton and Nancy J. Heaton, his wife, for the consideration aforesaid, which was agreed upon and fixed at five hundred dollars, executed and delivered to plaintiff, on or about the 17th day of August, 1870, a special warranty deed, conveying to plaintiff all their right, title and interest in and to the west half of said quarter section.

That on or about the 18th day of November, 1872, Lucius R. Heaton proved up and filed in the proper United States land office the requisite proof to entitle him to a patent from the United States for the said quarter section, under said homestead laws, and received from the proper officers of the land office a certificate entitling him to receive a patent.

That since proving up and obtaining said certificate, Lucius R. Heaton utterly refuses to convey to plaintiff the west half of said quarter section, and has declared to plaintiff that he never had any intention, at any time, of so doing.

That ever since the fifth day of July, 1870, the plaintiff has continued to reside with his family on the west half of said quarter section, that for more than a year past he has had 60 acres of the same under cultivation; that he paid the defendant Heaton $50 for breaking a portion of the same, and has made other improvements, exceeding in value $800.

That the defendants, Lucius R. and Nancy J. Heaton, confederating with the defendant, Samuel E. Day, to defraud the plaintiff of his rights in the premises, about the 13th day of January, 1873, executed and delivered to Samuel E. Day, for the nominal consideration of $1,150, a duly acknowledged warranty deed for said quarter section, and the said Samuel E. Day executed and delivered to Lucius R. Heaton a duly acknowledged mortgage deed of said premises, nominally for the purpose of securing to Heaton the sum of $1,050, in certain installments.

That Samuel E. Day had actual notice of the special warranty deed to plaintiff and of plaintiff's claim to the west half of said quarter section, and that said Day paid no consideration for said quarter section, and that the warranty deed and mortgage were executed to give color of title to Day, in order to cheat and defraud the plaintiff.

That the defendants, Day and Lucius R. Heaton, threaten to divest plaintiff of the west half of said quarter section, and of his improvements thereon.

Plaintiff prays that the deed to Day and the mortgage to Heaton be declared fraudulent and void, so far as the west half of said quarter section is affected, that plaintiff be decreed to be the owner thereof, and the defendants Lucius R. and Nancy J. Heaton, be ordered to convey the same to him.

The defendants filed answers denying most of the material allegations of the petition, and cross-petitions asking affirmative relief. Afterwards the defendants filed an amendment to their answers, as follows: "That as alleged by plaintiff the defendant, Lucius R. Heaton, did take the southeast quarter of section thirty-six, in township ninety-two, of range forty-eight, Plymouth county, Iowa, as a homestead, under the homestead laws of the United States, to-wit: An Act of Congress, entitled An Act to secure homesteads to actual settlers on the public domain, approved May 20th, 1862, and Acts amendatory thereto, and that by the terms of said homestead law, all parties are prohibited from taking such homestead for the use and benefit of any other person, and are prohibited from making any alienation of such lands while held as homesteads, and such taking for the use of another or alienation renders such entry void, and that the agreements and contracts set forth in paragraphs 4, 5, 6, and "Exhibit A" of plaintiff's petition, are wholly illegal and void, and in violation of said homestead act, and the plaintiff can recover nothing upon said alleged agreements, and the same is a fraud upon said act, and the plaintiff is a *particeps criminis* in the perpetration thereof."
The court decreed that plaintiff is the owner of the west half of the quarter section in controversy, and quieted his title thereto. The defendants appeal. It is agreed that the action

shall be tried in this court on the following agreed statement of facts:

1. All the material fact statements in plaintiff's petition shall be taken and considered as true, that have any bearing on the issues joined thereon in defendant's amendments to their answers, upon which issues alone defendants prosecute their appeal.

2. It is agreed and admitted in addition that, prior to April 6, 1868, Oaks had built a good substantial dwelling house of hewn logs, one and one-half stories high, on the quarter section in controversy. That April 6, 1868, he took possession with his family and has lived there ever since. That during the spring of 1868, he broke and planted ten acres; in July built a stable 12x18; in October an addition thereto 20x20; in the summer built a cow yard ten rods square, and in the fall plowed eight furrows around the quarter section. That in the spring of 1869, he broke seven acres more and put all the plowed land in crops, and planted 500 cottonwood and some maple and mulberry trees, and in the summer dug and constructed a substantial out door cellar 10x12, and in September 1869, filed a pre-emption on the quarter section. That in the spring of 1870, he broke five acres more and put all his plowed land in crops, except five acres, which he rented to defendant, Lucius R. Heaton; and that up to July 5th, 1870, he had made improvements on the land costing in labor and money more than $500. That he is a poor man, and with the exception of personal property needed for farm and family use, has no other property, besides that claimed in this contest."

*Argo & Ball* and *C. R. Marks*, for appellants.

*Pendleton & Bailey*, for appellee.

DAY, J.—As is apparent from the statement of facts, the sole question in this case is: Can an occupier of land, under the homestead act of 1862, make a valid contract to convey his homestead, when he shall have acquired the legal title?

Section 2 of the act in question, 12 United States Statutes

Oaks v. Heaton.

at Large, 392, provides that the person applying for the bene-
fit of this act shall, upon application to the regis-
ter or receiver of the land office in which he or
she is about to make such entry, make affidavit
before such register or receiver that such application is made
for his or her exclusive use and benefit, and that such entry is
made for the purpose of actual settlement and cultivation,
and not either directly or indirectly for the use or benefit of
any other person or persons whomsoever; and, on payment of
ten dollars, he or she shall thereupon be permitted to enter
the quantity of land specified. Provided, however, that no
certificate shall be given, or patent issued therefor for the
space of five years from the date of such entry; and if at the
expiration of such time, or at any time within ten years there-
after the person making such entry  *  *  *  shall prove,
by two credible witnesses, that he, she or they, have resided
upon or cultivated the same for the term of five years imme-
diately succeeding the time of filing the affidavit aforesaid,
and shall make affidavit that no part of said land has been
alienated, then he or she shall be entitled to a patent.

It is conclusively presumed that plaintiff knew of the pro-
visions of this law. He is presumed to have known, at the
time he made this contract with defendant, and accepted a
conveyance for one-half of the land intended to be home-
steaded, that he had placed defendant in a position which ren-
dered it necessary for him to perjure himself, before he could
obtain a patent to the land. How can plaintiff be permitted
to compel a conveyance, under a contract which rendered it
necessary that a crime should be committed, before there
could be anything to convey. If plaintiff had agreed with
defendant, that plaintiff would abandon his pre-emption claim
in consideration that defendant would convey to plaintiff one-
half the land, and then go before the register or receiver of
the land office, and falsely make affidavit that no part of the
land had been alienated, and and thus, by perpetrating a
fraud upon the government and committing a felony, obtain
a patent for the land, no one, probably, would claim, that any
court could lend its aid to the enforcement of the agreement.

*(margin note: 1. PUBLIC lands: homestead act: contract.)*

Although not in words so expressed, yet such is precisely the effect of the agreement which the plaintiff seeks to enforce.

In *Dawson v. Merrille*, 2 Nebraska, 119, it was held that the policy of the Act of Congress, granting homesteads on the public lands, is adverse to the right of a party availing himself of it to convey, or agree to convey, the land before he receives a patent, and that a court will not lend its aid to the enforcement of a contract which is against public policy.

Appellee relies upon *Snow v. Flannery*, 10 Iowa, 318, and *Nycum v. McAllister*, 33 Iowa, 374. *Snow v. Flannery* was quite different in its facts and in its principles, from this case. Snow and Flannery settled upon different parts of the same quarter section of public land, before survey, and both filed pre-emption claims upon the entire tract. Each remained in possession of his claim. The quarter was not subdivided and could not be entered in parts. Their rights, by actual settlement, were equal. Snow proposed to pay Flannery his share of the entrance money and withdraw his filing, if Flannery would enter the entire quarter and convey to him his share. Flannery declined making a positive agreement before taking the pre-emption oath, but said he did not want Snow's land, and would do what was right about it. Snow withdrew his filing and Flannery entered the entire tract. There was no contract which contemplated any false swearing, or fraud upon the government.

The case of *Nycum v. McAllister* is still less like the present case. In that case, a mortgage was executed upon the homestead, after the homesteader had occupied five years, and was entitled to a patent, but before the patent was issued. It was claimed that the mortgage was invalid under section 4 of the Homestead Act, which provides "that no lands acquired under the provisions of this act shall, in any event, become liable to the satisfaction of any debt or debts, contracted prior to the issuing of the patent therefor." It was held that this provision was simply for the benefit of the settler, and was not intended to disable him from incumbering his interest before receiving the patent. The case at bar arises under a distinct, and entirely different provision of the Homestead

Act. The court below erred in granting the plaintiff the relief asked.

Whether plaintiff would be entitled to the value of his improvements under the provisions of the occupying claimant law, this case does not involve, and we do not determine.

REVERSED.