# RICHARDS v. SNYDER & CREWS.

PRE-EMPTION CLAIM.—A pre-emptor who has entered a pre-emption claim, may sell before patent issues.

PURCHASER IN GOOD FAITH.—To constitute a purchaser in good faith, as against an outstanding equity, a party must plead and prove that the consideration was *bona fide* and truly paid, independently of the recitals in the deed.

IDEM.—Whenever a contract is, in its nature and incidents, entirely unobjectionable—when it possesses none of those features which, in ordinary language, influence the discretion of the court, it is as much a matter of course for a court of equity to decree its specific performance as it is for a court of law to give damages.

APPEAL from Umatilla County.

*Lucian Everts*, for appellant.

*John J. Balleray*, for respondents.

By the Court, THAYER, J.:

This appeal is from a decree in the circuit court for the county of Umatilla, rendered in a suit brought by the appellant against the respondents to enforce specific performance of a contract, and to compel the conveyance of a certain tract of land situated in said county of Umatilla, and described as lot 8, sec. 19, T. 4 N., R. 35 E.

The appellant alleged in his complaint, in substance, that on the 21st of March, 1873, the respondent, Snyder, then being owner of the land, agreed, in writing, to sell the same to appellant for $50, to be paid by the latter to the former as soon as the patent was received from the United States; that appellant thereupon entered upon and took possession of said land, and made valuable improvements thereon; that a patent for the land had been issued on the 1st day of March, 1877, to Snyder; that in 1882, he deeded it to the

respondent, Crews, and that Crews, prior to the time of the making the deed, had notice of appellant's right to it; that in August, 1882, Crews took forcible possession of the land, and has ever since remained in the possession thereof; that on the 14th day of October, 1882, appellant tendered to Snyder $100, and on the 21st of that month, same year, tendered a like sum to Crews, and demanded from each of them a conveyance of the land, and that they had each refused to make such conveyance.

The respondents specifically denied all the allegations of the complaint, but did not set forth any affirmative matters of defense.

The case was referred to a referee to take the testimony and report the facts and law thereon. The reference was ordered in June, 1884, and on the 30th day of that month, same year, the referee, against the protest of the appellant, closed the testimony and prepared and filed his report therein, whereby he found in favor of the respondents. The appellant's counsel, upon the filing of the report, filed a motion, supported by his affidavit, in which, among other things, he stated that he desired and expected to procure some record evidence from Union county, showing the time when the respondent, Snyder, made his final proof and payment for the land in controversy, and in which motion he prayed the court to set aside the said report for irregularity and misconduct upon the part of the said referee, in not allowing him a sufficient time in which to procure the evidence. The respondents opposed the motion, and the court overruled it and confirmed the report of the referee, and gave the decree thereon from which the appeal is taken.

It appears from the evidence taken by the referee, that the appellant, in 1866, bought from some occupant the im-

provements on the land in controversy; that he claimed to hold the possession of it, with the remainder of his claim, which appears to have been a kind of squatter's right, until March, 1871, when the respondent, Snyder, came on and erected a fence, against the will of appellant, dividing the land from the balance of his claim. Subsequently, the appellant received notice from the land office at La Grande, Union county, that the plat had been filed in that office, and soon after he went and filed on the land, but at the same time he was informed by the officers of the land office that Snyder had filed on it. That afterwards he heard that Snyder had made his final proof on the land, and thereupon he filed affidavits for a rehearing of the case, and forwarded them to the commissioner of the general land office at Washington. That thereafter he was notified by the land office at La Grande that the office there had been advised by the commissioner at Washington that a rehearing of the case had been ordered before the La Grande office, and that the latter office had set the time for such rehearing for the 21st day of March, 1873. It further appears that, on said 21st day of March, 1873, the appellant and Snyder were both at the La Grande office, and appellant claims that then and there he and Snyder entered into a written contract, which was made an exhibit in the case, and of which the following is a copy:'

### EX. "C," PLAINTIFF'S PROOFS.

This agreement, made between D. A. Richards and W. A. Snyder, as a settlement of all matters of difference between them, up to this day,

*Witnesseth*, That said Richards is to pay to said Snyder the sum of fifty dollars in gold coin, and said Snyder is to

execute and deliver to said Richards a good and sufficient deed of conveyance of lot 8, sec. 19, 4, 35 E., as soon as patent is received from United States, and said sum of $50 to be then due and payable; or, if patent is issued therefor to said Richards, he is to deduct .from said $50 whatever is paid to the U. S. for entrance money, and said Richards to be entitled to immediate possession of said lot 8, and both parties to do and perform every act necessary to carry out this agreement and obtain title from the United States.

Dated March 21st, 1873.

D. A. RICHARDS,
W. A. SNYDER.

The respondent, Snyder, in his testimony, denied that he had ever executed any such contract. He admitted, upon cross-examination, that he was in La Grande on March 21, 1873; stated that he went there to look at some land plots, and to attend to the rehearing referred to. But the appellant testified positively to its execution by both parties. The following is the testimony given by appellant upon that point, viz:

"Q. 18. Did you attend at La Grande at the time specified in the letter filed in this case and marked exhibit A, plaintiff's proofs? A. Yes, sir.

Q. 19. Did you have any conversation with Mr. Snider at that place and time, and if so, what was said? A. Yes. I had a conversation with him. We met here for the purpose of settling that contest, and he stated he would not contest for the land any further. After he made that statement, I told him that if the patent issued to him, that as he had made his final proof, if he would make me a deed I would pay him the entrance money, or pay him $50 in cash and he was to give me a good and sufficient deed. Then there

was an agreement drawn up to that effect.    After the agreement was made and signed, I asked him if he thoroughly understood the contents of that agreement, and he said he did.    I told him that I wanted him to thoroughly understand it, so that there would be no further trouble about it.    He said that I need not have any fear about it; that he never went back on his word.

Q. 20.    After you had this conversation in which Snider stated that he would not contend for the land, was there a written agreement made and entered into between the parties, and if so, state what you know about it?    A.    There was a written agreement entered into, drawn up by Col. Ellsworth, and signed by myself and Snider.

Q. 21.    What was done with this agreement after it was entered into?    It was placed in the hands of the receiver at the land office at La Grande, for safe keeping, I suppose."

He then identified the agreement, and it was filed and marked as shown by the exhibit.    Another witness, A. S. Thompson, testified, on behalf of the appellant, that he was at La Grande on or about the 21st of March, 1873; that he went there as a witness for appellant in the land case; heard appellant and respondent, Snyder and Col. Ellsworth talking about the land; that they settled it; that the way it was settled, appellant was to have the land and said respondent was to have, he thought, $50; that the respondent was to give the appellant a title to it; that there was an agreement drawn up by Col. Ellsworth and read, and both signed it; they said it was such an agreement; that witness could not read it; that Col. Ellsworth read it in that way. It appears, also, that the appellant began to occupy the land soon after, and while there is some question as to the extent and notoriety of his occupancy, yet there is no doubt

but that he farmed the land for several years after the agreement is claimed to have been made, and raised several crops on it. It also appeared that the respondent, Snyder, had a tract of land adjoining the land in question, and that he sold it off and left the country long before the deed to respondent, Crews, was executed, though he claimed to have left an agent in charge of this land in question. We are of the opinion, from the weight of the evidence, that the said contract was executed by both appellant and Snyder. But it is further claimed by the respondents that the contract was in fraud of the pre-emption law of the United States; that it was a contract by a pre-emptioner of United States government land, to convey such land to appellant as soon as he obtained patent. The case has been here before upon the question of the sufficiency of the complaint, and this court then held, that it could not be inferred that the contract, which was set out in the complaint, related to land which Snyder was endeavoring to obtain title to as a pre-emption or homestead claim. That there was nothing in the complaint or written contract suggesting such a thing. But, it is further claimed by the counsel, that the facts and evidence show that the contract was made before final proof, or the issuing of the certificate of final proof. This is the real point in the case, and we are unable to agree with counsel in the conclusion he assumes. He has argued with much force, that in a suit for the specific performance of such a contract, it should clearly appear that it was such a one as a court of equity would enforce, and that it should not be left to uncertainty as to whether or not it was a contract to sell a homestead or pre-emption claim before final entry, but the respondents are not in a position to urge that view in very good grace. The referee closed the testimony while the appel-

lant's counsel was soliciting a delay in order that he could produce record proof as to the status of the respondent's title when the contract was executed, and the court refused to open the door of the evidence upon that point, as it might have done, and was urged to do by said counsel. It would have been much more satisfactory to this court had such proof been supplied, for then we would not have been compelled to spell out, from scraps of testimony, the condition of the respondent's title at the time. From the source referred to, we are inclined to the opinion that the respondent had, at the time the contract was entered into, made his final proof; and had paid for the land. The appellant testified that he had heard that the respondent had made his final proof, that he tacitly admitted it to appellant when they made the contract. And the testimony of Thompson was that the respondent said in his presence, before the day set for the contest in the land office, " that he would beat Mr. Richards; that he had sent money to the office to pay for the land, that he had the drop, or the advantage of him." Again, the contract was made under the advice of Mr. Ellsworth, an attorney of this court, and evidently in the presence of the officers of the land office, and was deposited with them for safe keeping. We would hardly presume, therefore, that it was a contract in conflict with a well known provision of a law of the United States—a clause in the pre-emption law which, long prior to that, had received a construction from the courts of the country, and was understood generally as intended to inhibit assignments and transfers of pre-emption rights, made for the purposes of speculating upon the bounty offered by the government of the United States to settlers in good faith. I understand that the inhibitory clause of that law, which is

claimed in this case to have been violated, was not designed to apply to contracts relating to local disputes between those who had settled upon the public domain and were honestly endeavoring by toil and privation to secure a home for themselves and families, nor to a sale of the claim after entry and payment of the purchase price, but that it was inserted in the act in order to prevent a class of land speculators from acquiring vast bodies of public lands through the agency of middle men who had no intention of establishing permanent residences. In the case at bar, both parties had settled upon lands belonging to the United States before the government survey had extended over them. Each had a claim, but, as frequently occurs, they overlapped each other. Both claimed the lot in dispute and filed upon it in the land office as a pre-emption claim. Snyder filed first, and, as we infer from the evidence, made final proof, and paid for the land, but the appellant entered a contest. When the time arrived for the hearing, the parties met, and probably considering the expense and trouble that would result therefrom, concluded, like sensible men, to adjust it. The case is very similar, in most respects, to that of *Snow* v. *Flannery*, 10 Iowa, 318. There the plaintiff had purchased and settled upon a claim prior to the public survey. When the land was surveyed, his claim proved to be upon the south half of a certain quarter section, and subsequently the defendant acquired the north half of the same quarter section. They both filed upon the whole quarter section; it being fractional, contained no smaller subdivision by the survey, and the whole quarter could only be entered by one pre-emptor. Thereupon, the plaintiff agreed to pre-empt the same and to convey to the plaintiff the portion embraced in his claim, but after having secured the title he refused

to execute the conveyance, and the court decreed that he should. The supreme court affirmed the decree. It was there held that a contract made before the issuing of the patent, to convey after, did not violate the letter or spirit of the law so as to invalidate the contract between the parties, and that if such contract were in violation of law, the defendant was the party who committed the wrong, that the government was the only party wronged, the only party that could take advantage of the wrong thus committed; and that in that proceeding the question could not be inquired into; that it could not be determined in the proceeding whether the defendant did obtain the title to the land by making false representations at the time of his entry; that the plaintiff did not violate any law by his contract with the defendant, and that defendant should not be allowed to set up his wrongful act in bar of the plaintiff's rights. In *Myers* v. *Croft*, 13 Wal., 291, it is held, that a pre-emptor, who has entered a pre-emption claim, may sell before patent issues, and I find nothing in the authorities cited upon the part of the respondents that conflicts with that view. The distinction to be noted is, whether the agreement was a sale of the pre-emption right or a vested interest in the claim, after its acquisition under the law.

The respondent's counsel also claims that too long a time was allowed to elapse by the appellant before attempting to enforce the performance of the contract, but time was not made the essence of the contract; nor did the respondent, Snyder, attempt to make it the essence thereof, by calling upon the appellant, and demanding its performance upon his part, within a specified time. Both parties let it run on. The appellant, being in the exercise of a possessory right over the land, would not be likely to urge

its consummation, and, besides, the said respondent was away, living in various other sections of country, remote from the state of Oregon, a great part of the time. Said counsel claims, also, that the respondent, Crews, is a purchaser of the land in good faith, and his equities, therefore, being equal to those of the appellant, and having obtained the legal title, his position is the better. This would be true if he were an innocent purchaser in good faith of the land, but has he shown himself to be such? To constitute a purchaser in good faith, as against on outstanding equity, a party must plead and prove that the consideration money was *bona fide*, and truly paid, independently of the recitals in the deed. (2 Lead. Cases in Eq., 91, 120, 3 American, from 2 London Ed; *Boon* v. *Chiles*, 10 Pet., 177.) No such defense has been averred in the case, nor any proof made, independently of the recital in the deed from Snyder to Crews, of its payment. Besides, the circumstances surrounding the case, the appellant having cropped the land for several years prior to Crews' purchase, and the respondent, Snyder, not residing upon it, were such as would ordinarily put a prudent man upon inquiry. It seems that Crews reaped a volunteer crop after he went onto the land, the result of former cultivation. It hardly seems possible that he would have bought the place without endeavoring to ascertain whether or not appellant did not claim an interest in it. It appears he did examine the records of the land office, and of the county. The witness, J. T. Shaw, testified that he had a conversation with him at his, witness' residence, in Centreville, about the land. That witness asked him if he was not afraid he had " got his foot in it," to which Crews said, no; he had been to Grande Ronde, to the land office, and saw that Richards had no shadow of

a show to hold the land. If that testimony is reliable, Crews must have learned that Richards claimed some kind of a right to the land, and he should have gone to Richards to ascertain the fact; and besides this, his deed of purchase, under which he entered upon the land, was only a quit-claim deed. A purchaser under that kind of a deed cannot claim to be a *bona fide* purchaser of the property. We have decided that question at this term, in *Baker* v. *Woodward.* It is true that Crews, long subsequent to his entry, took from Snyder another deed to the lot, a deed of bargain and sale, with covenants of warranty, but he certainly had learned by the time he took the second deed, that appellant claimed the land. It is our opinion that the respondents have not shown that Crews was a purchaser in good faith, and that he stands in no better condition than Richards would have stood if he had not executed said deeds. The remedy to compel the specific performance of a contract, is not to be exercised as a matter of course. Its application should be controlled by circumstances, and courts are allowed to, and often do, exercise a discretion in granting it, but, as is said by Mr. Pomeroy, in his work upon Equity Jurisprudence, "whenever a contract concerning real property is, in its nature and incidents, entirely unobjectionable—when it possesses none of those features which, in ordinary language, influence the discretion of the court—it is as much a matter of course for a court of equity to decree its specific performance, as it is for a court of law to give damages for its breach." (Sec. 1402.) In the view we take of this case, the contract sought to be enforced is, in its nature and incidents, unobjectionable, and the appellant is entitled to its performance. It appears to have been entered into in good faith, and to have been acted upon

by the parties, and does not, under the view we have taken, conflict with any of the provisions of the pre-emption act.

Judgment reversed, and let a decree be entered as prayed for in plaintiff's complaint, and that he be required, in the decree, to pay to the respondent, Crews, the one hundred dollars, upon demand of the same.