GEORGE SWEESEY, Appellant, v. LYMAN SPARLING,
Appellee.

81 433
f125 282

**Public Lands:** HOMESTEAD ENTRY: PRIOR AGREEMENT TO CONVEY.
  The plaintiff and defendant having occupied different portions of
  a tract of public land, and improved the same, went to the land-
  office together with a view to making homestead entries therefor,
  and then discovered that it was necessary that the whole of the
  land be entered by one person. It was thereupon agreed that the
  plaintiff enter the entire tract, and, upon acquiring title, convey
  to defendant the portion occupied by him. *Held*, that the agree-
  ment was valid.

*Appeal from Monona District Court.*—HON. C. H.
LEWIS, Judge.

MONDAY, OCTOBER 27, 1890.

THIS action involves the title to a tract of land in
Monona county. The plaintiff claims to be the owner
of the property by virtue of a homestead entry made on
the fifteenth day of November, 1887. The defendant,
by an answer and cross-bill, claims that, although the
land in controversy was entered as a homestead by
plaintiff, yet that it was under an agreement between
the parties that, if the defendant would not attempt to
homestead the land occupied and claimed by him, and
would permit the plaintiff to homestead all land claimed
  VOL. 81—28

by both, he (plaintiff) would convey to the defendant that part of the tract claimed by him when he (the plaintiff) procured title from the United States. There was a trial upon the merits, and a decree for defendant. The plaintiff appeals.

*S. H. Cochran* and *C. E. Underhill*, for appellant.

*Pendleton Hubbard*, for appellee.

ROTHROCK, C. J.—The land in controversy is situated an the east bank of the Missouri river. It appears from the evidence that the plaintiff home-steaded the whole tract on the fifteenth day of November, 1887. He took possession of the land in September, 1884, and made improvements thereon by building a house, stable, sheds and cribs, and fencing and clearing up the land. One John Kennedy afterwards made a claim on part of the land, and lived upon it. The plaintiff advised the defendant that Kennedy desired to sell his claim, and, at the instance of plaintiff, the defendant bought Kennedy's claim, and moved on the land. The plaintiff assisted him in moving. Sparling has been in possession since that time. He built a house, and made other improvements. The evidence is quite clear that the plaintiff recognized the right of the defendant to the part of the land occupied by him to be the same as the right of the plaintiff to that part of which he had possession. The *status* of affairs so remained until the time of the entry. Both of the parties went to the United States land-office at Des Moines to enter their land, when it was discovered that, under the statutes of the United States, all the land had to be homesteaded by one person, or in a different shape from the way in which the parties themselves occupied it. The defendant claims that, to avoid the difficulty, it was agreed that Sweesey should enter the whole tract, and that, as soon as he procured the title, he would convey that part now in controversy to the

defendant. The plaintiff denies that any such agreement was made. There is a conflict in the evidence on this question. We are satisfied that it is shown by a fair preponderance of the evidence that the agreement was made as claimed by defendant. There is a preponderance so far as the testimony of the witnesses is involved, and defendant and his witnesses are strongly corroborated by the fact that it is undisputed that the plaintiff procured the defendant to purchase whatever right Kennedy had, and recognized the right of defendant to be equal to his own until after it was homesteaded in his name.

The question to be determined is, can the defendant enforce the agreement made at Des Moines? Or is he precluded from setting it up and claiming under it by the statutes of the United States? It is claimed that the case is within the rule announced by this court in *Oaks v. Heaton*, 44 Iowa, 116, and that the agreement made at the land-office was absolutely null and void. The rule in that case, as stated in the head-note, is as follows: "O. had pre-empted a quarter section of government land, and had made valuable improvements thereon, when he agreed with H. that, if the latter would take possession and perfect a title under the homestead act, he would relinquish his rights already acquired, and should receive, in consideration therefor, a deed to half of the land, when the title should be perfected. Held, that the agreement was in violation of the provisions of the homestead act of the United States, and could not be enforced." The case at bar, however, is more nearly like *Snow v. Flannery*, 10 Iowa, 318. In that case as in this, the parties settled upon the land before a survey was made by the government, and their respective claims were designated by themselves by claim lines, and both parties had equal claims when they appeared at the land-office to homestead the land, and it was discovered that, under the pre-emption laws, the land could not be entered in parts, but must be entered as a whole; one of the parties must give

way or both abandon their claims. In both cases substantially the same agreement was made, and in the cited case the agreement was enforced. It is claimed, however, that *Snow's case* arose under the federal statute of 1841, while the entry in the case at bar was made under the homestead act of 1862. We have examined these statutes. The act of 1841 provided that "all assignments and transfers of the rights hereby secured prior to the issuing of the patent shall be null and void." It is true that the act of 1862 is more explicit in requiring the entry to be made for the exclusive use of the person in whose name the entry is made, but both acts provide that transfers or assignments made before the patent issues shall be void. In our opinion, the case at bar is, in substance, the same as the case last above cited. The facts are so nearly alike that the same rules of law should be held to apply. Counsel for appellee also cite us to the case of *Dawson v. Merrill*, 2 Neb. 119, but that case has been overruled in several subsequent cases. See *Simmons v. Yurann*, 11 Neb. 516 ; *Bateman v. Robinson*, 12 Neb. 511; *Blanchard v. Jamison*, 14 Neb. 246 ; and *Carkins v. Anderson*, 32 N. W. Rep. 155. The last-named case strongly supports the views we have herein expressed.

We think the decree of the district court is right, and it is AFFIRMED.