## SEMER v. AUDITOR GENERAL.

1. TAXATION—DEED TO STATE—HOMESTEAD—RIGHTS OF ORIGINAL
OWNER.

The original owner of land deeded to the State under the home-
stead provisions of the tax law cannot attack the title of a
homesteader on the ground that the land was not barren,
swamp, worthless, or abandoned, as set forth in the certificate
of the examiner, which, prior to the amendment of 1899
(Act No. 107, § 127, Pub. Acts 1899), was a prerequisite to
such conveyance.

2. SAME—STATUTE OF LIMITATIONS.

The provision of section 131, Act No. 107, Pub. Acts 1899, limit-
ing the time within which suit might be brought to set aside
the title of a homesteader under pre-existing provisions of
the tax law to six months after said act became operative,
was a valid enactment, and available, though the original
sales to the State were jurisdictionally defective, and (CAR-

133  569|
f138  ¹501|

133  569|
144  ²250|

133  569
f146  ¹207|

133  569|
148  585|
e148  ¹587|
e148  ²597|

PENTER, J., dissenting) though the homesteader had not obtained his deed, but had in fact abandoned the land.[1]

Appeal from Delta; Stone, J. Submitted November 21, 1902. (Docket No. 226.) Decided June 30, 1903.

Bill by John Semer against Perry F. Powers, auditor general, Edwin A. Wildey, commissioner of the State land office, and Tekla Engstrom Sundelius, to set aside a deed to the State of certain tax lands, and a homestead entry thereunder. From an order overruling a demurrer to the bill, defendants appeal. Reversed.

*J. F. Carey*, for complainant.

*Horace M. Oren*, Attorney General (*Charles W. McGill*, of counsel), for defendants.

HOOKER, C. J. John Semer, the owner of the original title to certain lands in Delta county, filed a bill setting forth the following facts:

*First.* His ownership.

*Second.* That the lands are heavily timbered and valuable, and have never been occupied except by one Engstrom.

*Third.* That the township board passed a resolution requesting the auditor general and commissioner of the State land office to cause examination to be made of all lands in the township which had been bid off to the State for more than three consecutive years for the purpose of homestead entry.

*Fourth.* That the auditor general pretends that such examination was made, and that a certificate has been filed that the lands described are barren, swamp, or worthless, and have been abandoned by their owner, and bid in by the State for more than three consecutive years.

*Fifth.* On March 31, 1897, the auditor general transferred the land to the State, professing to act in accordance with section 127 of Act No. 154, Pub. Acts 1895, and said deed has been recorded.

*Sixth.* The county treasurer has canceled all tax sales upon his records.

---

[1] See *Commissioner of State Land Office* v. *Auditor General*, 131 Mich. 147.

*Seventh.* The auditor general caused a copy of the deed to be filed with the commissioner of the State land office, who now claims to hold the land subject to entry as homestead lands under section 131 of Act No. 206, Pub. Acts 1893.

*Eighth.* On August 3, 1897, Martin Engstrom, of Gladstone, made application to the commissioner to enter the land as a homestead, and received a certificate, under which he entered, and cut and removed valuable timber, cleared some land, and raised some crops, and moved upon the land, where he resided at intervals until the spring of 1899, when he abandoned the land. He died in February, 1900, and his widow subsequently married one Sundelius, and she now claims to be entitled to the possession of the land by virtue of said certificate, and to perfect her former husband's entry, and to receive a deed from the State on complying with the terms of the statute.

*Ninth.* That the proceedings are illegal and void because the examiner acted fraudulently, and reported this land as barren, swamp, or worthless, and abandoned by the owner, without an examination of the land; and that it is not barren, swamp, or worthless, but is valuable timber and agricultural land, and has never been abandoned.

*Tenth.* The bill sets up in detail the taxes charged against the land, constituting the alleged lien of the State.

*Eleventh.* It alleges that said taxes and the sales were illegal and void for various reasons stated.

*Twelfth.* It tenders payment of all such taxes, charges, etc., which may be found a lien.

*Thirteenth.* It alleges the unconstitutionality of section 127 of Act No. 154, and sections 128 to 134, inclusive, of Act No. 206.

*Fourteenth.* It alleges that the proceedings are a cloud on complainant's title.

*Fifteenth.* Prays taxes be set aside, deed declared void, homestead entry invalid, and statute unconstitutional.

The auditor general, commissioner of the State land office, and Mrs. Sundelius were made parties defendant, and all demurred. From an order overruling the demurrer, an appeal has been taken.

The statute upon which the defendants rely to support their demurrer is section 131 of Act No. 107 of the Public Acts of 1899. It contains a clause limiting the time within

which actions can be brought by one claiming the original or government title to recover the possession of the lands, or to set aside the title of "such homesteader." This section is amendatory. The original section providing for such disposition of tax lands was passed in 1893. It was amended in 1895, 1897, and finally in 1899, when the limitation clause was first incorporated. It is contended that, under all of these acts prior to 1899, certain things were essential to the jurisdiction of the proper officer or officers, wanting which their acts were void, and their attempts to convey valid interests in the lands abortive. The deed to the State was made in March, 1897, and the homestead certificate was issued in August of the same year.

Counsel for complainant contends that the statute does not apply to the case, for three reasons:

1. The homesteader never acquired title.
2. He abandoned the homestead, and his family continued his abandonment after his death.
3. The lands were not taken in conformity to the law existing at the time, and the proceedings were void.

The conclusion reached by the learned circuit judge who heard the case was that the action of the auditor general could not have been had under the law of 1899 (because that law was not yet passed), and did not purport to be, and that the provisions of the prior law gave no power nor jurisdiction to take lands unless barren, swamp, or worthless, which the bill alleged this land not to be; and that, as the law of 1899 was the first to provide for joint action by the auditor general and commissioner of the State land office, and the bill was not filed to set aside any such joint action, the provision limiting the time to six months after the determination by such officers does not apply to this case, and that such provision should be applied only to transactions subsequent to its enactment.

The land in question was taken as a homestead under the law of 1895, which provides:

"SEC. 127. Whenever it shall hereafter appear that any lands delinquent for taxes have been bid off to the State

for a consecutive period of more than three years, and that no application has been made to redeem or purchase the same, it shall be the duty of the auditor general and the commissioner of the State land office, when requested so to do by the township board of the township wherein such delinquent lands are situated, to cause an examination of such lands to be made as soon as practicable, to ascertain their value and the cause of the nonpayment of taxes thereon, and, if it shall appear that said lands are barren, swamp, or worthless lands, and have been abandoned by the owner, upon a certificate being filed by the examiner to that effect, the auditor general is hereby authorized to make a transfer by deed of the same to the State, as to an individual, as provided in this act, which deed shall be recorded in the proper county, and a copy filed in the office of the commissioner of the State land office, and said commissioner shall thereafter hold said lands as State lands, subject to sale as hereinafter provided; and failure to pay the taxes or to redeem or purchase any lands sold for taxes and bid to the State for more than three consecutive years, as aforesaid, shall be, in all cases where such lands are not actually occupied, *prima facie* evidence that such lands are abandoned by the owner."

The bill shows that the lands were delinquent, and had been bid off to the State for eight or ten consecutive years, and it does not state that an application to redeem or purchase them has been made, and we understand that no question is raised over the fact that they are subject to examination under this statute. The bill also alleges that the request of the township board, requisite to set the auditor general and land commissioner in motion, was duly made. It states—impliedly at least—that an examiner was appointed, who made and filed the statutory report, but that said report misrepresented the land, which is valuable, and was fraudulently made by said examiner, without examination of the land. Upon these allegations it is contended that the auditor general and land commissioner acquired no jurisdiction to act, and make the determination which is a prerequisite to the transfer to the commissioner.

We are of the opinion that this question is not open to this complainant. This land was *prima facie* the property of the State; and while, if its title was invalid, the true owner might controvert it, he was in no way concerned with what disposition the State should make of the land, if it was valid especially, as it could transfer no better title than it had. When the land was brought within the jurisdiction of these officers, and they acted, such action could not be overturned by a parol showing that it was not barren, swamp, worthless, or abandoned. There is a close analogy between this case and those which arose under the State swamp-land grants, where it was confided to the commissioner of the federal land office to designate the lands covered by the act. In those cases it was held that third persons could not question this selection, as was foreshadowed by the dissenting opinion of Mr. Justice Clifford in the case of *Railroad Co.* v. *Smith*, 9 Wall. 101, when he said:

"Special power is conferred upon the secretary of the interior to make out an accurate list and plats of the lands, and it is quite clear that a jury is no more competent to ascertain and determine whether a particular subdivision should be included or excluded from the list and plats required to be made under that section than they would be to make the list and plats during the trial of a case involving the question of title. Courts and juries are not empowered to make the required list and plats, nor can they determine what particular lands shall be included in the list and plats before they are prepared by the officer designated by law to perform that duty."

*Johnson* v. *Towsley*, 13 Wall. 72; *French* v. *Fyan*, 93 U. S. 172; *Ehrhardt* v. *Hogaboom*, 115 U. S. 67 (5 Sup. Ct. 1157).

The defendants claim a title under a certificate from the State, and are in a position toward the State and the complainant analogous to that of the patentees from the government in the cases cited. While this question is not open to the complainant, its determination has no bearing upon the right of the complainant to attack the title con-

veyed by the State by its certificate or deed, his right to
attack which in the hands of the holder is the same as
though it were still in the State, except as such right is
affected by the statute of limitations.

The act of 1899 was the first of the series of laws passed
upon this subject to impose a limitation upon actions to
recover such lands, other than those prescribed by the
general statute of limitations.   It provides two.   Section
127 provides:

" No suit shall be instituted to vacate, set aside, or annul
the said determination of the said auditor general and the
commissioner of the State land office, made as aforesaid,
unless instituted within six months *after the determina-
tion aforesaid.*   Any person desiring to file a bill or in-
stitute a suit to vacate the findings of the auditor general
and commissioner of the State land office, as provided in
this section, shall first pay to the auditor general all delin-
quent taxes," etc.

It is not improbable that this provision was designed to
be prospective merely.

Section 131 contained another provision, reading as fol-
lows:

" *And provided further*, that any person who has pur-
chased and entered into possession of any lands as a home-
stead under and by virtue of the provisions of this section
as originally passed or as amended, when said lands had
been bid off to the State and were held by the State for
the taxes of one or more years, and said lands were delin-
quent for taxes for three or more years, shall, on perform-
ing the other conditions of said section as amended,
receive a deed therefor as herein provided, and shall be
deemed to have a good, sufficient, fee-simple title to said
premises, to all intents and purposes, the same as though
said lands had been bid off to the State for a consecutive
period of more than three years, as originally provided in
section 127 of said act.   And in all cases where the lands
have been taken as a homestead as set forth in last fore-
going proviso, all actions of ejectment, or to recover
possession of said lands, or to set aside the title of such
homesteader, by any person, firm, or corporation claiming
the original or government title, shall be commenced

within six months after this act shall take effect, and not afterwards."

Before the demurrer can be sustained, we must find that the statute was retroactive. There is no trouble in this. It is expressly made so by its terms, and the legislature has authority to shorten the period within which an existing cause of action may be prosecuted, provided it give a reasonable opportunity. The following cases cited by counsel show this: *People* v. *Turner*, 117 N. Y. 227 (22 N. E. 1022, 15 Am. St. Rep. 498); *People* v. *Turner*, 145 N. Y. 451 (40 N. E. 400); *Turner* v. *New York*, 168 U. S. 90 (18 Sup. Ct. 38); *Saranac Land & Timber Co.* v. *Comptroller of New York*, 177 U. S. 318 (20 Sup. Ct. 642); *Terry* v. *Anderson*, 95 U. S. 628; *In re Brown*, 135 U. S. 701 (10 Sup. Ct. 972). Some of these cases have an application to complainant's third point, holding that a statute of limitation may be a valid defense against a title based upon proceedings void upon their face. See, also, Cooley, Const. Lim. (6th Ed.) 454; *Forster* v. *Forster*, 129 Mass. 559; *Cromwell* v. *MacLean*, 123 N. Y. 474 (25 N. E. 932); *Meigs* v. *Roberts*, 162 N. Y. 371 (56 N. E. 838, 76 Am. St. Rep. 322). The last case distinguishes the case of *Joslyn* v. *Rockwell*, 128 N. Y. 334 (28 N. E. 604).

This question is made plain by our own case of *Toll* v. *Wright*, 37 Mich. 93, where two statutes of limitation are discussed. One of these, enacted in 1863 (3 Comp. Laws, § 9714), was held not to bar an action where the adverse title was based on a sale (specified in the statute) if void upon its face. The other (being 2 How. Stat. §§ 6074, 6075; 3 Comp. Laws, §§ 9127, 9128) was a broader act, making no allusion to the action of a court, and it was held that the statute might be relied upon by one who held under any sale covered by the chapter mentioned. It was said that the construction contended for (which is the same relied on here) would defeat the statute entirely. The opinion continues:

"What, then, is the meaning of the statute when it speaks of sales 'by an executor or administrator under the provisions of this chapter?' It certainly does not mean valid sales, for those need no protection. Neither can it mean sales lawfully ordered, for it makes no mention of any order, and speaks of sales only. Neither can it mean sales in which the statute has in all important particulars been followed, for the manifest purpose is to make an undisputed possession cure defects in the proceedings. Indeed, it cannot possibly, as we conceive, mean more than this: A sale purporting to be made under the provisions of the chapter, and in pursuance of an order professedly based upon them. If the administrator, with such an order, has made sale under the provisions of this chapter, and given a deed under which the necessary possession has been had, we think the case is fairly within the intent of the statute."

The statute before us is analogous to section 9127.

We cannot accede to the claim that the six-months limitation is confined to cases where the homesteader has obtained his deed, but think it covers any case where one claims under a valid homestead certificate. Nor do we think that the case is affected by the alleged abandonment of the homestead. It is for the State to enforce or waive the forfeiture, as it may see fit. *Larison* v. *Wilbur*, 1 N. Dak. 284 (47 N. W. 381); *Snow* v. *Flannery*, 10 Iowa, 318 (77 Am. Dec. 120); *Richards* v. *Snyder*, 11 Or. 501 (6 Pac. 186).

A decree will be entered sustaining the demurrer, with costs, and remanding the cause for further proceedings, the bill to be dismissed, with costs, upon application made after a failure to amend the bill within 20 days after the decree is entered in this court.

MOORE, GRANT, and MONTGOMERY, JJ., concurred with HOOKER, C. J.

CARPENTER, J. (*dissenting*). I do not think the limitation of six months prescribed by section 131, Act No. 107, Pub. Acts 1899, applies in a case—like that before us —where the homesteader has no deed from the State, and

is not entitled to such a deed. Against the views urged in this opinion it is contended that this construction of the section makes the limitation clause entirely inoperative, as, at the time the law took effect, no homesteader was entitled to a deed. There is force in this argument, but not sufficient force to authorize us to give a construction to the law which, in my judgment, its language clearly forbids. I think it clear from its language that the legislature, believing there were cases "where the land had been taken as a homestead as set forth in the last foregoing proviso" (viz., cases in which homesteaders had obtained or were entitled to have their deeds), enacted the legislation in question, giving to such homesteaders, and to them only, the benefit of this extraordinarily short statute of limitations. If I am right in these views, and if there was no such case as supposed by the legislature, it is clear that its misapprehension does not give the court authority to apply the law to some other case. See *Woodward* v. *Watts*, 2 El. & Black. 452; *Reed's Appeal*, 114 Pa. St. 452 (6 Atl. 910).

I think the lower court was right in overruling the demurrer.