THOMAS J. LARISON, Plaintiff and Appellant, v. DWIGHT L. WILBUR and JOHNSON NICKEUS, Defendants and Respondents.

**1. Written Contract Not Invalidated by Prior Void Parol Contract.**

Where plaintiff, who held the patent title to certain real estate acquired by him under the pre-emption laws of the United States, entered into a contract, otherwise valid, for the sale and conveyance of such real estate, such contract was not invalidated by the fact that prior thereto, and not before plaintiff acquired his title, or filed his declaratory statement, a parol contract had been entered into by the same parties to the same effect.

**2. Pre-Emption; Question of Forfeiture Can Only be Raised by United States.**

As against all the world, except the United States, plaintiff had perfect title to said land, with good authority to sell and convey the same, and the question of forfeiture, by reason of the existence of said prior parol contract, under § 2262, Rev. St. U. S., can be raised only by the United States. Such forfeiture may be waived. This court cannot anticipate the action of the federal officers in that respect.

(Opinion Filed November 29, 1890.)

*A*PPEAL from district court, Stutsman county; Hon. RODERICK ROSE, Judge.

*S. L. Glaspell* and *John S. Watson*, for Appellant.

The oral contract made before the plaintiff made final entry was confessedly void, but the written contract made afterwards entirely supersedes the former: § 3545 Compiled Laws. The inhibition of the United States Statutes applies only while the land belongs to the government: Sutphen v. Sutphen, 2 Pac. Rep. 100. The second contract is not connected with the illegal act,

is founded on new consideration, and is valid: Armstrong v. Soler, 11 Wheat. 258; Fidler v. Norton, 30 N. W. 135. The question of forfeiture by the illegal oral agreement is one for the government only to raise: Woodbury v. Dorman, 15 Minn. 272; Richards v. Snyder, 6 Pac. Rep. 186; Snow v. Flannery, 10 Iowa 318. The defendants are not in position to allege that the contract was against public policy: U. P. Ry. Co. v. Durant, 95 U. S. 576.

Messrs. Nickeus & Wilbur for the respondents: The written contract was simply the oral contract reduced to writing, hence tainted with the same disease: Lamb v. Davenport, 18 Wall. 307; Greenhood on Public Policy, 574-5; Craig v. State, 4 Pet. 436; Hunt v. Kinckerbocker, 5 Johns. 327; Hall v. Coppell, 7 Wall. 542; Whett v. Buss, 57 Mass. 448; White v. Russell, 17 Mass. 257; Belding v. Pitkin, 2 Caines, 147; Holman v. Johnson, Cowper, 334; Gray v. Hook, 4 N. Y. 449; Woodworth v. Beimet, 43 id. 273.

BARTHOLOMEW, J. Plaintiff in his complaint alleged that on and prior to November 12, 1884, he was the owner in fee of certain real estate situated in Benson county, in the then territory of Dakota; that he held a patent for such land from the United States, and that on said November 12, 1884, entered into an agreement with defendants under the name of D. L. Wilbur, trustee, for the sale of said lands as follows: "This agreement made and entered into this 12th day of November, A. D. 1884, by and between Thomas J. Larison and Catherine A. Larison, his wife, of Benson county, D. T., of the first part, and D. L. Wilbur, trustee, of Stutsman county, and territory of Dakota, of the second part: That for and in the consideration of the sum of forty-two hundred dollars, to be paid as hereinafter mentioned, said parties of the first part agree to sell and convey, by good and sufficient warranty deed, to said second party, the east half of the south-east quarter and the east one-half of the north-east quarter of section sixteen, in township number one hundred and fifty-three north, and range number sixty-seven west, of the 5th principal meridian, D. T. The said deed shall be subject to a mortgage of three hundred dollars given

by said Larison to Mrs. B. B. Hotchkiss. Said second party agrees to make payments as follows: The sum of eighteen hundred and ninety-five dollars on and before the execution of this contract, the receipt of which is hereby acknowledged; the sum of thirteen hundred dollars on or before the first day of January, 1885; and the sum of thirteen hundred and one dollars on or before the first day of February, 1885, with interest thereon at the rate of ten per cent. per annum before and after maturity. Said Larison agrees to furnish an abstract of title to said land, showing good title in himself, and that same is free and clear of all incumbrance, except the mortgage of three hundred dollars, above referred to. Said first parties agree to execute said deed within twenty days from this date, and deposit the same in the First National Bank of Lincoln, Illinois, to be delivered to said second party by said bank when the conditions of this contract are completed by said second party. THOMAS J. LARISON. D. L. WILBUR, Trustee."

He then alleged the payment and receipt of a certain amount on the contract, and a full performance on his part of all the terms of said contract, including a tender of the deed, but that defendants had failed and refused to accept said deed, or pay for said land, according to the terms of said contract, and a decree was prayed enforcing the balance due under the contract with certain special and specific relief. The defendants Wilbur and Nickeus answered as follows: *First.* They deny each and every allegation in said complaint, save such allegations thereof as are hereinafter specifically admitted. *Second.* They admit that on and before the 13th day of November, 1884, the plaintiff was and now is the owner of the E. ½ of the S. E. ¼, and the E. ½ of of the N. E. ¼ of section 16, in township 153 north, of range 67 west. *Third.* In answer to paragraph 3 of plaintiff's complaint, defendants aver on or about July 20, 1883, defendants Hager, Cross, Wilbur, and Nickeus entered into an oral contract, but not as partners, with the plaintiff herein, whereby he agreed to pre-empt, prove up, and deed all of the said tract of land mentioned and described in said complaint, to-wit, the E. ½ of the S. E. ¼, and the E. ½ of the N. E. ¼ of section 16, in township 153 north, of range 67 west, to these defendants and

the said George W. Cross and Fred D. Hager, for the sum of $4,500, $1,500 of which has been paid. That on or about the said 20th day of July, 1883, and for a long time subsequent thereto—the exact date these defendants are unable to state—the said tract of land belonged to the United States government; that is to say, the plaintiff herein had not filed his declaratory statement for said tract, nor did he enter and pay the government for said land until the summer of 1884, as these defendants are informed and believe, and that, prior to the date of plaintiff's entry of said land, these defendants had paid him on said contract about $1,000; that the written instrument set out in paragraph 3 of plaintiff's complaint is the oral agreement hereinbefore mentioned reduced to writing. *Fourth.* That all of the transactions hereinbefore set out in plaintiff's complaint and in this answer were in fraud of the United States land laws, and therefore null and void. Wherefore defendants pray that the contract entered into by the plaintiff and defendants be declared null and void, and plaintiff's complaint be dismissed, and for the costs of this action. To this answer plaintiff demurred on the ground that the answer did not state facts sufficient to constitute a defense. This demurrer was overruled, and this ruling of the court is assigned as error. The complaint sets out in *hæc verba* a contract of sale November 12, 1884, whereby plaintiff agrees to sell and convey to defendants, and defendants agree to purchase from plaintiff, the land therein described on the terms and conditions therein specified. The execution of this contract is admitted by the answer. The parties named in this contract are Thomas J. Larison and Catherine A. Larison, of the first part, and D. L. Wilbur, trustee, of the second part.

The answer sets up a parol contract for the sale and purchase of the same lands made more than a year before between Thomas J. Larison and the defendants individually. The terms of this parol contract are fully set forth, and the answer alleges that the written instrument set out in the complaint is this parol contract reduced to writing. There is a demurrer to the answer, and hence both contracts stand admitted as pleaded. Both standing admitted, the question whether or not they are the same contract is a conclusion of law, and not admitted by the de-

murrer. An inspection of the pleadings show clearly that the two contracts, while pertaining to the same subject-matter, and seeking to reach substantially the same result, are, nevertheless, distinct and separate contracts. The original parol contract, made on the 3d day of June, 1883, at a time when plaintiff had no title to the land, but simply contemplated filing upon it as a pre-emption, was clearly a violation of § 2262, Rev. St. U. S., and as such was void. Mellison v. Allen, 30 Kan. 382, 2 Pac. Rep. 97, and cases cited. It was void not because it was wrong in itself, or involved any moral turpitude, but because it was prohibited on grounds of government policy. The prohibition was temporary in its nature. When the pre-emption right should ripen into patent title, the prohibition would be swept away. The parties to that parol contract evidently comprehended their legal rights and disabilities perfectly. They must have understood that the parol contract was of no binding force, because when plaintiff had procured the patent title, and thus removed the inhibition of the statute, the parties again met— plaintiff in person, and D. L. Wilbur, trustee, representing the defendants, (and his authority to do so is not questioned)—and executed the written contract of November 12, 1884, on which plaintiff bases his right of recovery. The contention of the parties involves the one question, whether or not this written contract is so connected with the former contract, so impregnated with that illegality, as to bring it within that class of cases which a court of equity refuses to lend its aid in enforcing. The learned judge of the district court evidently thought that it was, and so held the answer good. We are unable to reach the same conclusion. We recognize the doctrine contended for by respondent that if this written contract is based upon any promise growing out of the illegal contract, or if the illegal contract is in any way or to any extent the consideration for the written contract, or if the written contract cannot be enforced without connecting it with, or calling to its aid, the illegal contract, then it should not be enforced in a court of equity.

In our view it is idle to say that the parties never made but one contract, that their minds never met after June 3, 1883. When the parties voluntarily and understandingly executed and

acknowledged the contract of Nov. 12, 1884, we are bound to conclusively presume that their minds met then and there. We next notice that this written contract is complete and perfect in all its parts. There is nothing that will warrant us in saying that the new contract was made because the parties considered themselves bound by the old one. It is evident that they knew they were not bound. The written contract was made because the one party desired to sell and the other to purchase the land. The consideration was complete on both sides. So far as the record shows, it was just the contract these parties would have made had they never had any prior negotiations; and, had that been the case, no question of the legality or sufficiency of this contract would ever have been raised. It seems evident that the legal contract did not grow out of the illegal; that the illegal was in no sense the consideration for the legal; and that the legal can be enforced without any connection with or reference to the illegal. We are not prepared to hold that because, at a time when they could not legally do so, these parties contracted relative to a certain subject-matter, therefore they are forever barred from contracting with each other relative to that same subject-matter. The contrary doctrine has been announced time and again by the courts with reference to what are known as "Sunday contracts." We think this case covered in all its points by the case of Sutphen v. Sutphen, 30 Kan. 510, 2 Pac. Rep. 100. That was a stronger case for defendant than is this. That case was between father and son. The father had a homestead filing. Before final proof he entered into a parol contract with the son for the conveyance of the homestead land to the son for a specific consideration, portion of which was paid down in the cancellation of an indebtedness from the father to the son. After final proof the father, without any further contract, deeded to the son, when another payment was made, and the balance left to be paid in the future. This balance not being paid, the father brought suit to recover it, and the son set up as a defense the illegality of the transaction. The supreme court of Kansas, by Brewer, J., said: "Doubtless the original contract made before plaintiff had perfected his title to his land was void. But when the deed was made the father had a right to

convey.   *   *   *   *   *   And when, without further stipulation or new arrangement, the father executed a conveyance to the son, the fair interpretation is that it was in execution of that prior contract; that it was a present affirmation of its validity, a new contract, so to speak—a sale upon the time and terms theretofore agreed upon." It requires no interpretation in this case to establish the new contract. Its execution at a time when it was not inhibited stands admitted. A distinction is claimed between lands held as a homestead or as a pre-emption. In either case any contract to convey before final proof renders it impossible to make final proof without committing perjury; yet § 2262, Rev. St. U. S., provides for forfeiture in case of pre-emption except in favor of *bona fide* purchasers for value, while no such consequences follow in case of a homestead, and defendants claim that they cannot safely take the land because it is subject to forfeiture. But such is not the case if they are in good faith purchasers, and, if they are not, they are in no condition to seek protection from a court of equity. But, in any event, this question of forfeiture is not in the case. Plaintiff had a good title as against all the world except the United States, with a perfect right to sell and convey. The question of forfeiture can only be raised by the general government. Snow v. Flannery, 10 Iowa, 318; Richards v. Snyder, 6 Pac. Rep. 186; Railroad Co. v. Durant, 95 U. S. 576. Granting that the right of forfeiture exists, we cannot anticipate the action of the United States. The forfeiture may be waived. In any event defendants are fully protected under their covenants of warranty. A question of practice was raised in this court, but a ruling on the question cannot affect the result, and the condition of the record is so unsatisfactory that this court is in doubt as to the exact view of the question taken by the trial court, and therefore we decline to pass upon the question. For the error in overruling the demurrer to the answer, the judgment must be reversed and remanded, with directions to the trial court to reverse its judgment and sustain the demurrer. All concur.