Decided at PENDLETON, July 20, 1895.

# KINE v. TURNER.

[41 Pac. 664.]

SPECIFIC PERFORMANCE OF A PARTIALLY PERFORMED CONTRACT THAT IS AGAINST
PUBLIC POLICY.— A contract by a prospective purchaser of public land to
convey to another a portion thereof upon the receipt of the patent, in
consideration of the latter's refraining from bidding at a public sale of the
whole tract, is void as against public policy, and will not be enforced,
although partially performed; especially will this be so where it is in
reference to land sold under the act of congress of March third, eighteen
hundred and eighty-five, as that act contemplates that the purchaser is
purchasing the land for his own use and occupation, and not for or on ac-
count of or at the solicitation of another.

APPEAL from Umatilla: JAMES A. FEE, Judge.

This is a suit by Pat Kine against Ida and R. Marvin
Turner to enforce the specific performance of a parol
contract for the conveyance of a small tract of land in
what was formally the Umatilla Indian Reservation.  The
quarter section of which it forms a part was purchased
for the defendant in April, eighteen hundred and ninety-
one, by her father Jehu Switzler, at public sale by the
government of the United States under the act of con-
gress of March third, eighteen hundred and eighty-five,
providing for the allotment of a portion of the reserva-
tion lands to the Indians, and the sale of the surplus at
public auction.  The contract which plaintiff seeks to
enforce was made between him and Switzler, as the agent
of defendant, before the sale, and was to the effect that if
plaintiff would refrain from bidding for the land as he
contemplated doing, and allow Switzler to purchase it at
its appraised value, the defendant would, as soon as she
got a patent therefor, convey to him the particular tract
in controversy at the same price per acre that she should
be compelled to pay for the entire one hundred and sixty
acres.  In pursuance of this agreement plaintiff, although

present at the sale, did refrain from bidding on the land, and it was purchased by Switzler for his daughter, without competition, and at the lowest price for which it could be sold under the law. Within two or three days thereafter plaintiff went into possession of the land Switzler had agreed defendant would convey to him, and he has ever since resided thereon with his family, making valuable and permanent improvements with the knowledge of and without objection from the defendant, until after she received her patent, when she repudiated and denied the contract, and refused to convey the land to plaintiff, and hence this suit. Briefly these are the facts as claimed by plaintiff, and upon which he relies. The decree of the lower court was for defendant and plaintiff appeals.        AFFIRMED.

For appellant there was the following brief by *Messrs. Bailey, Balleray and Redfield,* and oral argument by *Mr. John J. Balleray.*

There are but two points in this case. *First,* whether the act of congress of March third, eighteen hundred and eighty-five, entitled "An act providing for the allotment of lands in severalty to the Indians residing upon the Umatilla Reservation in the State of Oregon, and granting patents therefor, and for other purposes," in any way restricts the alienation before patent issues to that portion of said lands not allotted or set apart to the Indians, but which was sold at public auction. Appellant claims that said act in no way interferes with the right of alienation of those lands that were sold at public auction pursuant to the act above noticed. This contract was not one concerning the title to the land purchased by Ida Switzler, or one by which the title was to inure to anybody but herself, and if the construction of the act of March third, eighteen hundred and eighty-five, contended

for by the defendant was correct, this contract does not come under its provisions. That statute never intended, nor in any way suggests, the prohibition of a contract to dispose of a small portion of such purchased land, but aims only at contracts affecting title, if anything, and whether void or not, a court of equity will not allow the defendant to retain both her land and the improvements made by the plaintiff by her encouragement, without compensation: Pomeroy on Specific Performance of Contract, § 129; *Myers* v. *Croft*, 80 U. S. (3 Wall.), 295; *Smith* v. *Ewing*, 23 Fed. 741; *Simmons* v. *Wagner*, 101 U. S. 261; *Richards* v. *Snyder*, 11 Or. 250; *Snow* v. *Flannery*, 10 Iowa, 121. We think, therefore, that the clause making void conveyances and contracts, etc., concerning lands set apart and allotted, applies only to those lands which were set apart for and allotted to the Indians, and consequently, that the act itself contains nothing making void any contract or conveyance concerning surplus lands which were not set apart or allotted, but were sold to the highest bidder. *Second*, whether if said act does restrict the alienation of such lands before patent issues, a contract to sell a small portion of a tract so purchased from the government after the purchaser should receive his patent, followed by continued occupancy with the knowledge of the vendor, and the placing thereon of valuable improvements, not only with the knowledge of the vendor, but by and through her encouragement, and her repeated assurances that this tract should be conveyed, is not such a contract, and does not constitute such circumstances as would warrant a court of equity in decreeing a specific performance of the same, or at least compelling the vendor in case specific performance is not decreed, to compensate the vendee for such improvements: Pomeroy on Specific Performance of Contract, § 126, also §§ 96 to 120, and § 287; *Parkhurst* v. *Van Courtland*, 1 Johns. Ch. 273; *Goodwin* v. *Lyon*,

4 Port. (Ala.), 297; *Wack* v. *Sorber,* 2 Whart. 387; *Dunn* v. *Moore,* 3 Ired. Eq. 364; *Sandfoss* v. *Jones,* 35 Cal. 481; *Pingree* v. *Coffin,* 78 Mass. 288.

For respondent there was a brief by *Messrs. Cox, Cotton, Teal and Minor,* and an oral argument by *Mr. Wirt Minor.*

Opinion by MR. CHIEF JUSTICE BEAN.

It will be perceived that plaintiff is confronted at the outset with the objection that a contract concerning the purchase and conveyance of land belonging to the United States, which is about to be offered for sale at public auction to the highest and best bidder, and having for its sole consideration the forbearance of one of the parties to bid at such sale, is illegal and void, and one which a court of equity will not enforce. The agreement between plaintiff and Switzler, whether it was for the conveyance of the land in dispute, as claimed by plaintiff, or for a twenty years' lease, as claimed by Switzler, was probably entered into at the time by both parties in good faith, for their supposed mutual benefit, and with no intention on the part of either to defraud the other. But this is not enough. The real question is whether the contract is not illegal because it contemplated a fraud upon the government of the United States, by stifling competition, thereby enabling Switzler to purchase at a price less than the land would otherwise have sold for. If so, it was void as against public policy, and plaintiff cannot recover in this suit, whatever may have been the motives of the parties, and however upright their intentions may have been, as between themselves. The aid of a court of equity cannot be invoked to enforce the performance of a contract for the conveyance of land, if it is contrary to the spirit and policy of the law, or against public policy or good morals: Pomeroy on Specific Performance, § 280;

*Drake* v. *Ballou,* 19 Kan. 397.    In such case the court will leave the parties where it found them, and refuse to encourage the making of such contracts by lending its aid to enforce them.    The courts have repeatedly refused to enforce the specific performance of the contract of a homesteader to convey a portion of his claim when he shall acquire title from the United States, although there is no prohibition against alienation in the homestead law, and no express forfeiture in case of alienation.    Contracts of this character are deemed to be in violation of the spirit and policy of the homestead law, void as against public policy, and cannot be made valid by part performance: *Oaks* v. *Heaton,* 44 Iowa, 116; *Anderson* v. *Carkins,* 135 U. S. 483 (10 Sup. Ct. 905); *McCrillis* v. *Copp,* 31 Fla. 100 (12 So. 643); *Mellison* v. *Allen,* 30 Kan. 382 (2 Pac. 97).

The same principle, it seems to us, must be applied in this case.    The act of March third, eighteen hundred and eighty-five, under which the land was sold, provides that the surplus reservation lands shall be sold at public auction, the evident policy of the government being to obtain the highest and best price therefor at an open public sale, fairly conducted, and any contract or agreement between intending purchasers tending to prevent competition at such sale, is necessarily in violation of the spirit of the law under which it was made, and in fraud thereof.    It is important that sales at public auction should be conducted in good faith, without prejudice to the rights of any party, and for that purpose the law encourages bidding, and will not recognize as valid any contract or combination to prevent competition at such sales: Pomeroy on Specific Performance, § 283; *Jones* v. *Caswell,* 3 John. Cas. 29 (2 Am. Dec. 134); *Wilbur* v. *How,* 8 Johns. 444.    "A sale at auction is a sale to the best bidder," says HENDERSON, C. J., "its object a fair price, its

means competition. Any agreement, therefore, to stifle competition is a fraud upon the principles on which the sale is founded. It not only vitiates the contract between the parties, so that they can claim nothing from each other, but also any purchase made under it, their claims against the vendor being weaker than those against each other, policy alone forbidding that the last mentioned should be enforced, but both policy and justice uniting to condemn the former. If this be the rule with regard to auctions instituted by private individuals, *a fortiori* should it be as those public auctions instituted by law for great public purposes": *Smith* v. *Greenlee,* 2 Dev. 126 (18 Am. Dec. 564). That the contract between plaintiff and Switzler comes within this principle seems to us clear. It was made for the express and avowed purpose of preventing competition, and the only consideration for defendant's promise was a forbearance on the part of plaintiff to bid against her at the sale. The contract was thus plainly in fraud of the rights of the government of the United States and the Indians to whom the proceeds of the sale belonged, and in violation of the spirit and policy of the law under which the sale was made, and consequently void as against public policy.

Nor does the fact that plaintiff entered into possession and made valuable improvements on the land make valid a contract which was before illegal, or give him a right to any relief in this suit. His present condition is the result of a voluntary agreement on his part, the tendency of which was to defraud the government; and although the defendant may have obtained an advantage, unconscionable as it may be, a court of equity will keep its hands off, and leave the parties where it finds them. The original agreement being void as against public policy, and both parties being alike guilty, no subsequent act of part performance can give it validity; and

27 OR.—46.

the courts will refuse to enforce it or any rights acquired thereunder, not, however, from any regard for the defendant, but from motives of public policy alone.

And again, it seems to us, the contract is in violation of the manifest theory of the act of eighteen hundred and eighty-five, which is that the land should be sold only to bidders desiring it for their own exclusive use and occupation. It requires each purchaser to make oath or affirmation at the time of making his purchase that he is purchasing the lands for "his own use and occupation and not for or on account of or at the solicitation of another, and that he has made no contract whereby the title shall directly inure to the benefit of another"; and before patent shall issue he is required to make "satisfactory proof that he has resided upon the lands purchased at least one year, and has reduced at least twenty-five acres to cultivation." These provisions clearly indicate the policy of the government to dispose of the lands for the actual use and occupation of the purchaser, and not for speculative purposes; and while it may be true that the act contains no express prohibition against a contract of alienation made before the purchase, yet it cannot be consummated in such case without perjury, and the courts have uniformly and with one voice declared that a court of equity will have nothing to do with the enforcement of a contract which can only be carried out by perjury, and which was entered into in defiance of the clearly expressed will of the government. Whether a contract for a sale of the lands made after a purchase and before patent issues would be valid is not material here, although the question was ably and exhaustively argued at the hearing, because it is admitted that the contract which plaintiff seeks to enforce was made before the sale; and whether it is absolutely void or not it is so manifestly against the spirit of the act of eighteen hundred and

eighty-five, and so necessarily resting upon perjury, that the aid of a court of equity cannot be invoked for its enforcement. It follows that the decree of the court below must be affirmed, and it is so ordered.

AFFIRMED.

Decided at PENDLETON, July 20, 1895.