LIZZIE FLEISCHER *vs.* ERNSTENIA FLEISCHER.

**Quieting Title—Evidence—Public Lands—Illegal Contract.**

Defendant's husband made a timber-culture entry upon certain land, and thereafter deserted the defendant. Defendant, believing that she could not, as a married woman, contest the entry of her husband, and fearing that the entry might be successfully contested by a stranger, entered into an oral agreement with her son, the deceased, whereby the latter agreed to contest the entry of his father, and, if successful in such contest, agreed to make a timber-culture entry upon said land, and thereafter prove up and obtain title in his own name under such entry; and further agreed that, after so obtaining title, he would convey the land to the defendant without consideration other than love and affection. Defendant agreed on her part to pay all the land-office expenses incident to carrying out said oral agreement, and to plant trees and cultivate the same, and at her sole expense to make all the improvements required to be made upon the land under the laws governing timber-culture entries on government land. The defendant fully complied with said agreement on her part, and the deceased, after instituting a successful contest of his father's claim, entered the land as a tree claim, and thereafter proved up and obtained a patent therefor from the government in his own name; but the deceased never at any time conveyed the title to the defendant, but died without doing so. During all the time in question defendant had the possession and beneficial use of the land. The action is brought to quiet title in the estate of the deceased, and defendant, for affirmative relief, prays that oral agreement between herself and the deceased be enforced, and that title in fee may be passed to her by a decree of court. The trial court quieted title in the plaintiff, and awarded the posession of the land to the plaintiff, as administratrix of the estate of the deceased. *Held,* that such judgment was properly entered.

**Equity will not Enforce Illegal Agreement.**

The oral agreement to the effect that the deceased should make a timber-culture entry for the use and benefit of the defendant was illegal, and one which tended to thwart the policy of the government with respect to timber-culture entries upon the public domain, and was, moreover, an agreement which, in its performance, necessitated the commission of perjury. A court of equity will not lend its aid to enforce an illegal agreement.

**Title Obtained from Government.**

*Held,* that the title obtained from the government by the deceased was an indefeasible title, except as against the government, and the same descended to his heirs at law.

**Right of Administratrix to Sue.**

*Held,* further, that the administratrix was not, with reference to said illegal agreement, in pari delicto with the defendant, and hence

could maintain this action, and recover the possession of the land from the defendant.

Appeal from District Court, Traill County; *Pollock, J.*

Action by Lizzie Fleischer, administratrix of William Fleischer, against Ernstenia S. Fleischer. Judgment for plaintiff. Defendant appeals. Affirmed.

*J. F. Selby* and *P. G. Swenson,* for appellant.

A married woman whose husband has deserted her can hold and prove up a timber culture entry. *In re Waltenburger,* 2 Copp. L. O. 828; *Glazer* v. *Bogardis,* 2 L. D. 311. So, when her sons informed appellant that she could not hold her timber culture claim because she was married she was misled to her prejudice. William Fleischer filed for his mother upon the land which she had an undisputed right to hold and prove up in her own name. The arrangement was to protect defendant and was not fraudulent. *Church* v. *Adams,* 61 Pac. Rep. 639. The statute does not inhibit a timber culture claimant, who has made his entry in good faith, from contracting to sell his claim prior to final proof. *Sims* v. *Bussey,* 4 L. D. 369; *U. S.* v. *Reed,* 5 L. D. 313. The reasoning in *Anderson* v. *Carkin,* 135 U. S. 483, involving homestead and pre-emption does not apply in cases involving timber culture entries. *Church* v. *Adams,* 61 Pac. Rep. 639. Good faith and strong equities will protect and preserve appellant's rights. *Barlow* v. *Barlow,* 28 Pac. Rep. 607; *Sutphen* v. *Sutphen,* 2 Pac. Rep. 100; *Larison* v. *Wilver,* 1 N. D. Rep. 284, 47 N. W. Rep. 381. Her long possession; her legal right to perfect proof; her payment of fees and expenses; contest filing and final proof; cultivation and improvements and in planting and cultivating the trees; her remaining in exclusive possession of the land, together with the acts and conduct of William Fleischer in treating the land as belonging to her, his declarations and admissions are sufficient to establish a resulting trust in the land in favor of appellant. *Barlow* v. *Barlow,* 28 Pac. Rep. 607; *Hagen* v. *Powers,* 72 N. W. Rep. 771; *Dorman* v. *Dorman,* 58 N. E. Rep. 235; *Rayl* v. *Rayl,* 50 Pac. Rep. 501; *Costa* v. *Sylva,* 59 Pac. Rep. 695; *Dana* v. *Dana,* 28 N. E. Rep. 905; *Reynolds* v. *Sumner,* 126 Ill. 58, 9 Am. St. Rep. 523. There are sufficient acts constituting particular performance to take this case out of the statute of frauds. *Story* v. *Black,* 1 Pac. Rep. 135; *Irwin* v. *Dyke,* 1 N. E. Rep. 913; *Lamb* v. *Hindman,* 8 N. W. Rep. 709. Even if the contract of the parties was invalid the plaintiff is not entitled to damages for use and occupancy of the land, so far as contract was executed, even if invalid it would be binding, and the court will not disturb it. *People* v. *Evens,* 8 N. D. 121, 77 N. W. Rep. 93; *Kirkpatrick* v. *Clark,* 24 N. E. Rep. 71.

*John Carmody* and *F. W. Ames,* for respondent.

Equity will not assume jurisdiction to compel the specific performance of a contract that is illegal in any of its features. 22 Am.

& Eng. Enc. L. 1094; *Dial* v. *Hair,* 54 Am. Dec. 179; *Lewid* v. *Walker,* 1 Mo. App. 459; *Handy* v. *St. Paul Globe,* 41 Minn. 188, 42 N. W. Rep. 872, 4 L. R. A. 466; *Coppell* v. *Hall,* 74 U. S. 7, 19 L. Ed. 244. A void contract cannot be ratified. *McCormick* v. *Nichols,* 19 Ill. App. 334; *White* v. *Sutherland,* 64 Ill. 181; *Waterson* v. *Brulsland,* 1 Mo. App. 45. If a contract between William Fleischer and appellant had been brought to the attention of the land department at the time of the timber culture entry was made or at the time of the final proof, the proof would have been disallowed. The appellant, therefore, has no interest in the land and equity will not serve her. *Anderson* v. *Carkins,* 10 Sup. Ct. Rep. 905; *Mellison* v. *Allen,* 2 Pac. Rep. 97; *Dial* v. *Hare,* 43 Am. Dec. 179; *Carley* v. *Gitchel,* 62 N. W. Rep. 1003; *Nichols* v. *Counsel,* 9 S. W. Rep. 305; *Robinson* v. *Jones,* 47 N. W. Rep. 380; *Dawson* v. *Merrill,* 2 Neb. 119; *Warren* v. *Van Brunt,* 22 L. Ed. 219; *Evans* v. *Fulsom,* 5 Minn. 422 *St. Peter Land Co.* v. *Bunker,* 5 Minn. 199; *McCue* v. *Smith,* 9 Minn. 259; *Oakes* v. *Heaton,* 42 Ia. 116; *Brake* v. *Ballou,* 19 Kan. 397; *Gaines* v. *Molen,* 30 Fed. Rep. 27. Thus special performance of a contract by which a party agreed to furnish half the government price of land and improvements in consideration of the other party permitting and conveying one half the land to him will not be enforced. *Marshall* v. *Cowells,* 3 S. W. Rep. 188; *Sherman* v. *Eakin,* 1 S. W. Rep. 359; *Cox* v. *Donnely,* 34 Ark. 762; *Persons* v. *Persons,* 84 N.W. Rep. 668; *Palmer* v. *March,* 24 N. W. Rep. 140. The testimony of appellant to prove her contract consisted of scattered statements to different individuals, vague, indefinite and uncertain. They lacked the essentials of an agreement. *Lowe* v. *Lowe,* 86 N. W. Rep. 11.

WALLIN, C. J. This action was brought to quiet the title to the N. W. ¼ of section 26, township 144 N., of range 51 W., in Traill county. The district court entered judgment in favor of the plaintiff after a trial without a jury, and the case is now before this court for trial anew on appeal from such judgment.

The facts in the record which are uncontroverted may be epitomized as follows: In the year 1878 Charles W. Fleischer, the husband of the defendant, made a homestead entry upon the northeast quarter of said section 26, and at the same time made a timber-culture entry upon the land in controversy. In the spring of 1879 said Charles W. Fleischer and his family, then consisting of his wife and seven minor children, removed from the state of Minnesota, and took up their residence upon said homestead claim, and the defendant has ever since resided upon such homestead with her family. In the years 1879, 1880, and 1881 Charles W. Fleischer broke a portion of the tract embraced in the timber culture entry and in the year 1881, or prior thereto, planted five acres of said tract to seeds and cuttings, as required by the laws of congress governing timber-culture entries. In the month of June, 1881, Charles W.

Fleischer deserted his family, and departed from the territory of Dakota, and said desertion has ever since continued. In the year 1884 the deceased, William Fleischer, instituted a contest of said timber-culture entry before the local United States land office, and such proceedings were had therein that said entry of Charles W. Fleischer was canceled, and the deceased, William Fleischer, made a timber-culture entry upon the same land in the month of November, 1884. In the year 1897 the deceased made final proof under his said entry, and later the United States government issued to Wililam Fleischer a patent conveying the title of the land to him in fee simple, which patent bears date of August 15, 1898, and the same is duly recorded in the office of the register of deeds of Traill county. William Fleischer died intestate on the 2d day of September, 1899, and the plaintiff, his widow, was duly appointed administratrix of his estate in the month of October, 1900, and has ever since continued to act in said capacity, and as such administratrix the plaintiff has inventoried the land in controversy as a part of the estate of the deceased. The defendant, at her own expense, aided by her children, continued to improve the land embraced in said timber-culture entry, and in so doing in the years 1881, 1882, and 1883, broke and backset 90 acres of the same, fitted the same for cultivation, replanted and cultivated the 5 acres of trees and cutting therefore planted by her husband, and planted and cultivated an additional 5 acres of trees on said tract, and in all respects as to improvements, and at her own expense, complied with the provisions of the acts of congress governing timber-culture entries upon the public domain. It is further conceded that after the deceased made his timber-culture entry upon the premises in the year 1884, and during the lifetime of the deceased, viz., during the years 1895, 1896, 1897, 1898, and 1899, and after the death of the deceased and during the year 1900, the defendant occupied the premises, and cultivated the same and during all of said years the defendant had the exclusive possession and beneficial use of the premises without objection upon the part of the deceased, and so used and occupied the premises during the lifetime of the deceased with his consent. The further fact appears in evidence that the defendant, with the knowledge and consent of the deceased, paid the taxes upon the land in the year 1898, and also paid the taxes, after the death of deceased, for the year 1899. The evidence further shows that in the year 1901, and after notice that plaintiff, as administratrix, claimed the land, and the possession thereof, as part of the estate of the deceased, and claimed the right to the immediate use of the entire tract in question, the defendant took possession of, seeded, cultivated, and harvested 45 acres of the land in question; and the trial court found—and, we think, properly—from the evidence that the value of the use of said 45 acres in the year 1901 was $90. The trial court also found the following facts: That during the lifetime of the deceased he "permitted said defendant to have the

use and occupation of said premises free of charge, and without other or further consideration than that of love and affection and those items of expense to which the said defendant had been put by reason of improvements on said land and caring for the same and the payment of taxes thereon, and that during all the times hereinbefore referred to the defendant was in the possession of the said land." We think this finding of the trial court has ample evidence to support it, and it may be added that there is not a scintilla of evidence in the record tending to show that the deceased at any time said or indicated that he expected to receive from the defendant any consideration for the use of said premises over and above that found in said finding of fact, nor is there any warrant in the evidence for holding that the deceased intended to take possession of the land in question at any time within the lifetime of the defendant, or at all. But the defendant claims to be the equitable owner of the land, and that the deceased held the title in trust for the use of the plaintiff; and defendant, by her answer, asks for affirmative relief, that judgment may be entered in this action compelling the plaintiff, as administratrix, to carry out such trust, and execute to the defendant a proper deed of conveyance of the land. The defendant bases her title upon an alleged trust relation, which is set forth by certain allegations in her answer, which are, in effect, briefly as follows, viz.: That defendant in the early part of the year 1884, became apprehensive that the said timber-culture entry of her husband was in danger of being successfully contested and lost, and, to avoid any such result, and for the purpose of retaining the use and benefit of the land for herself and family, and as means of acquiring title thereto in herself, the defendant entered into an oral agreement with her son, William Fleischer, the deceased, who was then above the age of 21 years, to the effect that said 'William Fleischer should, in furtherance of the interests of the defendant and her children, enter a contest against the filing of his father as made upon the land in 1878, and, if successful in said contest, that he (the deceased) should make a timber-culture entry upon the land in his own name, and thereafter, under said entry, obtain title to the land from the government of the United States. The answer further states, in effect, that said arrangement between the defendant and the deceased was to the effect that the deceased should, on receiving the title to the land from the government, without consideration, convey the title to the defendant in fee simple. Defendant further alleges that said agreement between herself and her son was such that the defendant was to be and remain in the full and exclusive possession of the land, and have the sole beneficial use thereof, and that defendant should make the improvements at her own expense necessary to be made to entitle her son to prove up at the land office and obtain title under his said entry; and it is further alleged that it was agreed that all the ex-

pense incident to the proposed contest and in acquiring title to the
land should be advanced and paid by the defendant. The answer
further states that the deceased did, in the year 1884, institute a
contest of his father's entry, which contest was successful; and that
pursuant to the arrangement with the defendant, the deceased, in the
same year, made a timber-culture entry on the land in question, and
in the year 1897 proved up and received a final receipt or certificate,
upon the surrender of which he received a patent for the land in his
own name, which patent was dated August 15, 1898, and has been
recorded. The answer further alleges that the expense of said con-
test was $30, and that of making final proof was $50; that all of said
expenses were paid by the defendant; and that all expenses in and
about making necessary improvements upon the land were advanced
and paid by the defendant. The answer further avers, in substance,
and the evidence shows, that the deceased, at all times before the
patent issued to him as well as thereafter,.fully recognized and ratified
the said arrangement, and never repudiated the same, and that at all
times during his lifetime he acquiesced in the defendant's occupation
and beneficial use of the land, and that during his lifetime, and
after the patent issued, the deceased often spoke to the defendant
and divers other persons about executing a deed conveying the title
of the land to the defendant, but that the execution of a deed of con-
veyance was delayed from time to time, and that the same was never
executed. It therefore appears by the answer and by the testimony,
that the defendant bases her rights in the premises not upon any
independent arrangement or agreement with the deceased made after
he became seized of the title to the land, but upon said oral agree-
ment made in the year 1884, and upon its reaffirmation, and upon
the performance of said agreement by both parties to the same in
so far as the agreement was carried out. The answer does not allege,
nor does the evidence tend to show, any agreement between the de-
ceased and the defendant whereby the deceased morally or otherwise
obligated himself to convey the title of the land to the defendant
at any time, except only by and under said oral arrangement made
in 1884, and upon which the deceased proceeded to institute a contest
of his father's entry. Nor is there any evidence whatever tending
to show a new consideration for any other or different agreement
to convey the title to the defendant. The evidence is conclusive
to the effect that the defendant, acting upon the advice of her two
sons, was led to enter into such agreement with the deceased as a
means of saving the land for herself and her family, and because
she was led to believe that she could not, as a married woman, per-
sonally act in acquiring title to the land in her own name. Nor is
there any evidence that the deceased knowingly and intentionally in-
stituted this contest with any purpose which was actually fraudu-
lent, either with reference to the defendant or illegally with reference
to the government of the United States. On the contrary, there is
abundant evidence that the deceased on many occasions, and to dif-

ferent persons, both before and after he acquired title to the land, acknowledged a moral obligation on his part to convey the land, and expressed a purpose of conveying the same to the defendant, and often made statements to the effect that the land in question by right belonged to his mother, and that he intended to transfer the title to her.

In reaching a conclusion upon the facts at issue we have not ignored objection to testimony which appears of record, but we deem it unnecessary in this case to discuss the admissibility of evidence. When all the competent evidence is considered, we are of the opinion that the facts pleaded in the answer are established by competent evidence, and the case will therefore be disposed of on this theory of the facts. In support of their contention the defendant's counsel claim that the deceased at the time of his death held the title of the land in trust for the defendant's use, and further contend that if, for any reason, the deceased was not such trustee, then, and in that event, a court of equity will decree a specific performance of the promise of the deceased to convey the land to the defendant. Counsel concede that a parol agreement to convey land is within the prohibition of the statute of frauds, but insist that the evidence shows that the equities of the defendant, as shown by the evidence, are ample to take the case out of the operation of the statute, and are of such weight as will entitle the defendant to a decree of specific performance. In support of this contention it is claimed that the acts of congress governing timber-culture entries do not, in terms or otherwise, forbid the alienation of the claim of the entryman after the entry is once made, and that the evidence shows in this case that after the entry was made by the deceased he reaffirmed and ratified the oral agreement as made with the defendant at a date prior to his entry. The evidence, however, goes no further than has been stated. There is no allegation or evidence showing that the deceased at any time after making his entry made or attempted to make any new agreement to convey the land to the defendant, but there is evidence, consisting chiefly of the admissions made by the deceased, that he considered himself as resting under a continuing obligation to convey the title to the defendant under the parol arrangement made with her before his entry of the land. In support of this feature of their contention, counsel cite *Church* v. *Adams,* (Or.) 61 Pac. Rep. 639; *Sutphen* v. *Sutphen,* (Kan. Sup.) 2 Pac. Rep. 100; *Larison* v. *Wilbur,* 1 N. D. 284, 47 N. W. Rep. 381. In our opinion, neither of these cases is in point. The facts in all the cases cited serve to distinguish them from the case at bar. In the Oregon case a party who had made a good-faith entry of a tract of land under the timber-culture laws entered into a written contract to transfer his claim so obtained to a copartnership of which the entryman was a member. This written agreement was upheld by the court upon the ground that the laws of congress do not, in terms, prohibit the transfer of a timber-culture entry in cases where the original entry was made in

good faith, and was so made before a transfer is made or agreed to be made. The facts in the Oregon case obviously do not comport with those in the case at bar. Here there is no written agreement to transfer the tree claim or the land covered by the entry, and, on the contrary, the agreement in this case was entered into before the entry, and at a time when an agreement was made in contravention of law, or at least clearly against the policy of the law. Nor is the case of *Sutphen* v. *Sutphen* nearer the mark. In that case, a father having a homestead filing agreed orally with his son, for a stipulated price, to sell the homestead to the son, and convey the same to him after title should be obtained by the father. After acquiring title, the father executed and delivered to his son a deed conveying the land to the son, and such conveyance was made upon the identical terms and consideration as stated in the parol agreement. The action in that case was brought to recover an unpaid balance of such purchase price. The son pleaded in defense of the action that the parol contract was illegal, and made in violation of the law forbidding the sale of homestead claims before title is secured by the homesteader. This defense was overruled, and Brewer, J., speaking for the court, held, referring to the deed of conveyance, "that it was in execution of that prior contract; that it was a present affirmation of its validity; a new contract, so to speak; a sale upon the time and terms theretofore agreed upon." But the case at bar is quite dissimilar. In this case there is no deed of conveyance evidencing any "new contract"; nor is there a new agreement of sale, either oral or written, whereby a new agreement is concluded upon the terms and consideration embraced in the original arrangement between the deceased and the defendant, or upon any terms whatever. Nor is the case of *Larison* v. *Wilbur* (decided by this court) in point. In that case a pre-emptor, after acquiring title under his pre-emption, entered into a written agreement with the defendants to sell the land for a price named in the agreement. The action was to recover a portion of the purchase money, and the defendant answered, alleging that the written agreement embraced the terms of a certain unlawful oral agreement made between the same parties before the pre-emptor made his filing, and under which the pre-emptor agreed to sell and convey the title to the defendant after acquiring title under the pre-emption laws of the United States. The written agreement was upheld as a new agreement made at a time when the vendor had a right to make the same. But it is manifest, for reasons already stated, that the case at bar does not fall within the principle of the case last cited. In this case there is neither a new agreement nor a written agreement to sell. There is another difference which distinguishes that case from this. In the case at bar there never was an agreement to sell. The essence of the oral agreement was that William Fleischer, in consideration of love and affection for his mother, and for no other consideration, agreed to act in his mother's interest in acquiring title to the land from the government on condition that she should bear the expense

and do the work required by the law, and that, after acquiring title, he was to convey the same to his mother.

This leads us to a consderation of defendant's contention that the deceased was a trustee, and held the title in trust, and that the defendant is the beneficiary under such trust, and that, in consequence, a court of equity will, by its decree, compel an execution of the trust by requiring the plaintiff, as administratrix, to convey the title to the defendant. In support of this contention counsel cite *Hagan* v. *Powers,* (Iowa) 72 N. W. Rep. 771; *Rayl* v. *Rayl,* (Kan. Sup.) 50 Pac. Rep. 501; *Costa* v. *Silva,* (Cal.) 59 Pac. Rep. 695; *Dana* v. *Dana,* (Mass.) 28 N. E. Rep. 905; and *Barlow* v. *Barlow,* (Kan. Sup.) 28 Pac. Rep. 607. With the exception of the case last cited, none of the cases here referred to arose under the acts of congress governing the matter of acquiring title to public lands. The other cases tend to show that, where the consideration for land is paid by one person and the title is conveyed to another, to be held by the latter until demanded, the relation of trustee and trustor is thereby created. This is a well-recognized rule of law, and one voiced by chapter 58 of the Civil Code. See page 939, Rev. Codes 1899. We think the case of *Barlow* v. *Barlow,* supra, is a case most nearly in point. In that case husband and wife removed from Iowa to the state of Kansas, with a view to acquiring land. At that time the wife was possessed of some property, but the husband had little or none. Under these conditions it was agreed that any land which might be acquired in Kansas should belong to the wife. The husband took a homestead claim in Kansas, proved up under the same, and obtained a receiver's certificate, which he at once delivered to his wife, and then promised to convey the title to her as soon as he received a patent from the government. The husband, who was then without means, and was nearly blind, further said that he desired to live upon the land as long as he lived, and that he wanted his wife to build upon it and furnish him a home there. She promised to do so, and thereafter furnished the necessary money and labor, and continued to make improvements on the land until the death of her husband who died without conveying the title. Eight years after his death certain children of the husband by a former wife, who had never lived in Kansas, instituted an action to partition the land. The partition action failed, and the land was awarded to the widow of the deceased. It will be noticed that in the Barlow Case there was no special agreement shown between husband and wife touching the homestead claim, and hence, unlike the case at bar, there was no agreement made which contemplated a direct violation of any act of congress or the commission of perjury. Their agreement was a general understanding only, to the effect that, inasmuch as the wife owned the property, she should become the owner of any land acquired in Kansas, and this arrangement was made with no reference to any particular tract of land. Under these circumstances the husband

had an undoubted right to agree to convey to his wife at the time he promised to do so, in connection with the delivery of the receiver's certificate to her. In connection with that promise the husband exacted a reciprocal promise from his wife to further improve the premises and make a home for them on the place. This promise was faithfully performed by the wife, and she continued making improvements thereunder. Upon this state of facts the wife was awarded the title, and, we think, properly. We think that the case was taken out of the operation of the statute of frauds by the equities inherent in the case, and hence that the decree giving her the title can be sustained upon that ground, viz., upon the ground that the wife relied upon the word of her husband, and acted on it to such an extent that a decree for a specific performance of the new promise was proper under the peculiar circumstances and equities of that case. In the case at bar there is no such promise, and there are no equities which originate in and depend upon any new promise. But there is a further and radical difference which distinguishes this case from that of *Barlow* v. *Barlow*. In the case at bar there was a special arrangement made between the defendant and the deceased at a date prior to the entry of the land made by the deceased. This agreement called for and necessitated a violation of the laws of congress and of the policy of the government with respect to timber-culture entries of public lands; and, worse still, it was an arrangement which could not possibly be carried out without the commission of perjury. The entry man, under an act of congress, is required, as a part of his entry, to make an affidavit embodying the following averments: "That this filing and entry is made for the cultivation of timber and for my own exclusive use and benefit; that I have made the application in good faith and not for the purpose of speculation, or directly or indirectly for the use or benefit of any other person or persons whomsoever, and that I intend to hold and cultivate the land and to fully comply with the provisions of this act." If, when the deceased applied to the land office to make his entry, that office had been advised of the fact that the applicant did not wish to make an entry for his own use, and did not expect to plant or cultivate any trees upon the land, or make any improvements thereon, and had been advised that the entry was sought for in the interests of the defendant, and that she alone was to make all the required improvements, and that she was to have the exclusive beneficial use of the land both before and after the title was acquired, and that, as soon as the title had been acquired, the same, under an agreement so to do, was to be conveyed to the defendant, what must have been the result? The question suggests its own answer. The entry would have been refused. These facts, however, were presumptively unknown at the land office, and the entry was allowed to be made upon said application embracing said affidavit. This record establishes the fact that the affidavit was false with

respect to the averments therein which are quoted above. It may be true—and it is charitable to assume the fact—that the parties to the arangement set out in the answer were actually unaware of the illegal nature of their agreement. Nevertheless, the court, under an established rule of law, must hold that they did know and did understand that the agreement was unlawful, and that the same could not be carried out without the commission of perjury. See 20 Stat. pages 113-115, embracing an act of congress approved June 14, 1878. It is therefore apparent that the very agreement under which the defendant claims the aid of a court of equity rests in an arrangement made in violation of the law, and one which included as an incident the commission of perjury. It is hardly necessary to say that a court of equity will never lend its powers in aid of any such unlawful enterprise. See *Dial* v. *Hair,* 54 Am. Dec. 179. See, also, Am. & Eng. Enc. Law (1st Ed.) p. 1014; *Mellison* v. *Allen,* (Kan. Sup.) 2 Pac. Rep. 97; and especially *Anderson* v. *Carkins,* 135 U. S. 483, 10 Sup. Ct. 905, 34 L. Ed. 272. In the case last cited Anderson contemplated filing upon land under the homestead laws, and before doing so entered into a written agreement, for a valuable consideration, to convey one-half of the tract to Carkins as soon as title from the government was obtained under the contemplated filing. Anderson made his entry, and in due course obtained title thereunder. The action was brought by Carkins to compel specific performance of the written agreement to convey. A decree was entered for plaintiff in the state court, but the supreme court of the Unied States reversed the same. Mr. Justice Brewer, speaking for the court, used this language: "There can be no question that this contract contemplated perjury on the part of Anderson, and was designed to thwart the policy of the government in the homestead laws to secure for the benefit of the homesteader the exclusive benefit of his homestead right. Such a contract is against public policy, and will not be enforced in a court of equity." In another part of the opinion, the following language is used: "Whether the contract be absolutely void or not, it is so clearly against the will and policy of the government, and so necessarily resting upon perjury, that a court of equity will have nothing to do with it." In our judgment, the quoted language, while used with reference to the laws regulating homestead entries, is equally applicable to the facts of this case, and is authority directly in point. If there was a contract between Anderson and Carkins which thwarted the policy of the government, and which necessitated the commission of perjury, there is a similar contract in this case, and in both cases the obnoxious contract is pleaded as a basis for relief in a court of equity. It will be conceded that the equities of this case, as manifested by this record, strongly plead in behalf of the defendant. The claim in question was originally entered by her husband, and after his desertion of the defendant she guarded it faithfully for years. It clearly ap-

pears that the timber-culture entry made by her son, the deceased, was made with a disinterested purpose to acquire the title for the use of the defendant and there is no evidence that such purpose was ever abandoned during the lifetime of the deceased. Nevertheless, this state of facts, persuasive as it is, cannot, in a court of equity, efface the controlling consideration that the defendant's alleged interest in the land has for its foundation an illegal scheme to thwart the law and the policy of the government with respect to timber-culture entries upon government land, and one which involves the commission of perjury in its execution. When all is said, the stubborn fact remains that William Fleischer, the deceased, never did convey the title to the defendant, nor agree to do so, by any agreement which a court of equity can enforce. The title vested in the deceased by the government patent was an indefeasible title in fee simple. Doubtless the government might have intervened, and procured a decree of forfeiture. But the government alone could institute a proceeding for this purpose, and it has never done so. See *Larison* v. *Wilbur*, 1 N. D. 284, 47 N. W. Rep. 381. Under the laws of descent the title of the deceased, at his death, became vested in his heirs at law. Counsel for defendant have suggested that, if the agreement was illegal, and one which, for that reason, a court of equity cannot enforce in defendant's favor, William Fleischer was necessarily in pari delicto, and that a court of equity would, for that reason, refuse to aid him; and hence, as counsel argue, the judgment of the trial court, which gave the plaintiff the possession of the land as administratrix of the estate of the deceased, was erroneous pro tanto,—citing *Kirkpatrick* v. *Clark*, 132 Ill. 342, 24 N. E. Rep. 71, 8 L. R. A. 511, 22 Am. St. Rep. 531. Undoubtedly there is a general rule of law, subject to certain exceptions, where parties are equally concerned in illegal agreements, that they are remediless as to each other. This maxim is expressed as follows: "In pari delicto potior est conditio defendentis et possidentis." But, in our opinion, this maxim can have no application to the facts of this case. Neither the plaintiff nor the minor children of the deceased have been guilty of any wrongful acts, and hence they are not in pari delicto with the defendant. The law which measures the duties of an administrator requires this plaintiff to inventory, account for, and safely keep all the property of which the deceased died possessed, to the end that the same may be distributed among the heirs of the deceased as the law directs. What the law itself requires the plaintiff to do, certainly cannot be illegal.

We find no error in the judgment appealed from, and the same will be affirmed. All the judges concurring.