[No. 8272.   Department Two.   November 30, 1909.]

## A. R. McMILLAN et al., Respondents, v. C. E. WRIGHT, Appellant.[1]

CONTRACTS—VALIDITY—PUBLIC POLICY—PUBLIC LANDS—ARID LAND ENTRY FOR USE OF ANOTHER. Under the Carey Act, 28 U. S. Stat. at Large 422, granting arid land to the states to be sold "in small tracts to actual settlers," and the laws of Idaho requiring a settler, upon final proof, to make oath that he has entered the land for his sole benefit, an oral contract by a prospective settler to enter land in trust for another, who advanced money for expenses, contemplates perjury, and is void as against public policy.

SPECIFIC PERFORMANCE—ISSUES AND PROOF—EQUITY. Upon allegation and proof of a contract, made in ignorance of the fact that it was void as against public policy, whereby an entryman on arid land was to deed a part thereof to another after he had obtained title, a court of equity will not compel an assignment of part of the land to enable the trustee to enter and obtain the land himself by complying with the law.

SPECIFIC PERFORMANCE—ACTIONS—DESCRIPTION. A contract to convey part of a tract of land cannot be specifically enforced where the specific portion to be conveyed is not designated.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered June 9, 1909, upon findings in favor of the plaintiffs, in an action for specific performance, after a trial before the court without a jury.   Reversed.

*Homer F. Norris* and *T. W. Hammond*, for appellant.

*Guy Cox*, for respondents.

CROW, J.—Action by A. R. McMillan and E. E. McMillan against C. E. Wright, to establish a trust in and to forty acres of land, and compel a conveyance thereof. From a decree in plaintiffs' favor, the defendant has appealed.

The respondents allege, that in August, 1907, they and appellant became interested in arid lands in Idaho, and agreed that appellant, for the benefit of respondents and himself,

[1]Reported in 105 Pac. 176.

should file upon one hundred and sixty acres, in an irrigation district formed under the Carey act; that respondents were to meet one-fourth of all expenses and one-fourth of the payments for the land and water rights; that as soon as the entry had been perfected and water rights secured, appellant was to execute to respondents an assignment of his rights as original entryman, for forty acres of land, with appurtenant water rights; that in pursuance of the agreement respondents advanced funds to appellant, who used the same in filing on one hundred and sixty acres, in securing water rights, and in making the first payments; that appellant afterwards tendered to respondents the money they had advanced, which they refused; that they are entitled to an assignment of appellant's interest as entryman in and to forty acres of the land, and the water rights therefor, and that the appellant has refused to assign or convey the same. The complaint contains other allegations not material to our present consideration. Answering, the appellant admitted that he had filed on the land, but denied the making of the alleged contract.

The only witness on the trial was E. E. McMillan. From his evidence it in substance appeared that, by an oral agreement, it was stipulated that appellant was to attend a drawing for arid lands in the state of Idaho; that if successful he was to file upon one hundred and sixty acres, secure water rights, use money advanced by respondents as part payment in so doing, and when he obtained a good title convey forty acres thereof to respondents. He testified in part as follows:

"Q. Before Mr. Wright went there, was there any understanding between you and him as to when you were to receive your proportion of the land? A. We always understood that we were to get a clear title to the land just as soon as he got it. The Court: That is as you understand it? A. He promised to give us clear title to the land as soon as he was legally able to do it. Q. Did you understand at that time when you were to get your deed or what it would be necessary for you to do before you got a clear title to the

land? A. He said we would have. to improve at least one-eighth of the land before we could get clear title to it—a certain portion of it."

From this evidence it is manifest that no assignment or conveyance was to be made by appellant until the improvements had been made, and he had obtained a clear title by final proof and patent. It fails to support the allegations or theory of the complaint that appellant contracted to transfer his rights as entryman, in and to forty acres, before making final proof or obtaining clear title. The law of Idaho is in part pleaded by respondents in their complaint, in the following language, and admitted by the appellant:

"That it is provided by the laws of the state of Idaho, among other things, as follows:

"(1) That the selection, management and disposal of the lands granted to the state pursuant to the Carey law shall be vested in the state board of land commissioners who are authorized to make such rules and regulations as may be necessary in order to carry out the purposes of the act; that any citizen may make application under oath to the board to enter any of the said land in an amount not to exceed one hundred sixty (160) acres for any one person. The applicant is required to set forth that the person desiring to make such entry does so for the purpose of actual reclamation, cultivation and settlement in accordance with the act of congress, and the laws of this state relating thereto . . .

"(2) That within one year after he shall be notified that water is ready to be furnished for irrigating the land, the settler shall cultivate and reclaim not less than one-sixteenth (1-16) part of the land tillable and within two years after the said notice, the settler shall have actually irrigated and cultivated not less than one-eighth ($\frac{1}{8}$) of the land filed upon and within three years after the date of such notice, the settler shall make final proof of reclamation, settlement or occupation in substance as required by the form set out herein below."

Then follows a blank form affidavit to be filed by the entryman in making final proof and obtaining title, in which under

oath he states: "That I entered this land for my sole benefit."

The appellant contends, that this is an action for the specific performance of an oral contract to convey lands; that the contract disclosed by the evidence of the respondent E. E. McMillan was against public policy, and cannot be enforced; that it is the manifest intention of the Federal and Idaho laws that actual settlers only shall be permitted to obtain the benefits of the Carey act, and that an entryman's application to purchase should be for his own sole use and benefit. The Federal statute, 28 U. S. Stat. at Large, 422, provides:

"That to aid the public land states in the reclamation of the desert lands therein, and the settlement, cultivation and sale thereof in small tracts to actual settlers, the Secretary of the Interior . . . is authorized . . . to donate, grant and patent to the state . . . not exceeding one million acres in each state, as the state may cause to be irrigated, reclaimed, occupied, and not less than twenty acres of each one hundred and sixty acre tract cultivated by actual settlers, . . . As fast as any state may furnish satisfactory proof . . . that any of said lands are irrigated, reclaimed and occupied by actual settlers, patents shall be issued to the state or its assigns for said lands so reclaimed and settled. . . ."

It is manifest from the Federal and Idaho laws that the lands were to be granted to actual settlers only, and that before a settler could make final proof and obtain title by a patent from the state of Idaho, he would be compelled to make oath that he had resided on the tract, and that he had entered the land for his sole use and benefit. If the contract proven by the evidence of the respondent E. E. McMillan be specifically enforced, the appellant will, by the decree of a court of equity, be compelled to commit an act of perjury in taking the required oath when making final proof. He must make an affidavit stating that he had entered the one hundred and sixty acres for his sole use and benefit, when, if E. E. McMillan's statement be true, he in fact entered

forty acres thereof for the use and benefit of the respondents, or in trust for them. Appellant in his answer denied the making of any contract, and now contends that the oral agreement shown by the evidence of the respondent E. E. McMillan is so manifestly tainted with fraud, and so clearly contemplates an act of perjury that it will not be enforced by the decree of any court of equity. This contention must be sustained. *Moore v. Moore*, 130 Cal. 110, 62 Pac. 294, 80 Am. St. 78; *McGregor v. Donelly*, 67 Cal. 149, 7 Pac. 422; *Kine v. Turner*, 27 Ore. 356, 41 Pac. 664; *McCrillis v. Copp*, 31 Fla. 100, 12 South. 643; *Fleischer v. Fleischer*, 11 N. D. 221, 91 N. W. 51; *Mellison v. Allen*, 30 Kan. 382, 2 Pac. 97; *Anderson v. Carkins*, 135 U. S. 483, 10 Sup. Ct. 905, 34 L. Ed. 272. In *Kine v. Turner, supra,* the court said:

"And again, it seems to us, the contract is in violation of the manifest theory of the act of 1885, which is that the land should be sold only to bidders desiring it for their own exclusive use and occupation. It requires each purchaser to make oath or affirmation, at the time of making his purchase, that he is purchasing the land for 'his own use and occupation and not for or on account of or at the solicitation of another, and that he has made no contract whereby the title shall directly inure to the benefit of another'; and, before patent shall issue, he is required to make 'satisfactory proof that he has resided upon the lands purchased at least one year and has reduced at least twenty-five acres to cultivation.' These provisions clearly indicate the policy of the government to dispose of the lands for the actual use and occupation of the purchaser, and not for speculative purposes; and, while it may be true that the act contains no express prohibition against a contract of alienation made before the purchase, yet it cannot be consummated in such case without perjury; and the courts have uniformly, and with one voice, declared that a court of equity will have nothing to do with the enforcement of a contract which can only be carried out by perjury, and which was entered into in defiance of the clearly expressed will of the government."

In *Mellison v. Allen, supra,* Brewer, J., said:

"That a contract whose consummation necessarily rests on perjury is illegal; that both purchaser and vendor are parties to the wrong; and that the courts refuse to enforce such a contract, not from any regard to the vendor, but from motives of public policy; and, finally, that courts of equity have always exercised a discretion in enforcing the specific performance of contracts to convey, and that it would be strange indeed if a court of equity lent its aid to enforce the performance of a contract founded upon perjury, and entered into in defiance of a clearly expressed will of the government."

The respondents in their brief seem to appreciate the force of these authorities, but seek to avoid their application by making the following suggestion:

"The evidence was that appellant promised to give respondents clear title to the forty acres as soon as he was legally able to do so. The parties at the time the agreement was made did not know the requirements of the Idaho law. It is clear that appellant could not make a contract to prove up for respondents, since to do so would make it necessary for him to swear falsely. He can legally, by deed of assignment, transfer his interest in forty acres now and give respondents clear title in so far as he is concerned. Before the respondents can secure a patent they must become residents and reclaim a part of the land."

The difficulty with this contention is that it seems to rest upon the unwarranted assumption that a court of equity, to afford relief, will make and enforce a new, valid, and unobjectionable contract, because it cannot enforce the invalid one, which in their ignorance of the law the parties themselves had actually made. It also assumes that the appellant may allege one contract, prove another, and secure an enforcement of the one alleged, because the one proven is invalid as against public policy, and unenforceable. The evidence produced upon the trial, in so far as it tends to sustain any contract whatever, discloses one for the conveyance of land after the appellant had himself obtained the legal

title, and the appellant is correct in his contention that this action is one for specific performance. If there were no other reason, the contract could not be specifically enforced, because no definite description of the particular forty acres to be conveyed has been proven or shown. In fact it is not fixed in the decree, but is to be hereafter determined. It is elementary that a contract for the sale or conveyance of a part only of a tract of land, which fails to designate the specific portion to be conveyed, is too indefinite to be the basis of decree for specific performance.

The judgment is reversed, and the cause remanded with instructions to dismiss the action.

RUDKIN, C. J., DUNBAR, MOUNT, and PARKER, JJ., concur.