BOARD OF SUPERVISORS OF ALCONA COUNTY *v.* AUDITOR GENERAL.

1. TAXATION—STATE TAX LANDS—TITLE OF STATE—DETERMINATION OF AUDITOR GENERAL.

It is the existence of the state of facts enumerated by section 127 of the general tax law as amended by Act No. 107, Pub. Acts 1899, which vests title to such lands in the State, and not the determination thereof by the auditor general.

2. SAME—APPOINTMENT OF EXAMINER.

That the auditor general did not previously make a formal determination regarding the list of lands submitted to the examiner appointed under section 127 of the generel tax law before his appointment is immaterial, he having been furnished with a list showing that the auditor general selected the lands to be considered.

3. SAME—RECORD OF DETERMINATION.

Keeping the record of the determination of the auditor general and land commissioner as to what lands examined under section 127 of the general tax law come within the provisions of that section on the folios or sheets used by the examiner is a sufficient compliance with the direction of the statute that such determination be recorded in a book.

4. SAME—SUFFICIENCY OF DETERMINATION.

A clerical error, by which the determination of the auditor general and land commissioner, made under section 127 of the general tax law, fails to show certain facts required by the statute, and which are admittedly matter of record, may be disregarded.

5. SAME—EXAMINATION—BAD FAITH OF EXAMINER.

The finding of the auditor general and land commissioner, based

on the report of the examiner under section 127 of the general tax law, forecloses inquiry into whether the examiner faithfully performed his duties as to all of the land.

6. Same—Intervention by County.

Whether a county has any interest in the nature of a vested right as against the State to compel State officers to conform to the strict letter of the statute in their disposition of State tax lands within the limits of the county, quære ?

7. Same—Mandamus.

Where all the conditions necessary to action by the auditor general and land commissioner, under section 127 of the general tax law, are present, save, perhaps, the one relating to the pendency of suits, and the answer of the officers to the petition for mandamus signifies an intention not to include lands as to which there are pending suits, if there be any, mandamus will not issue to restrain their action under the statute.

Mandamus by the board of supervisors of Alcona county to restrain Perry F. Powers, auditor general, and Edwin A. Wildey, commissioner of State land office, from placing certain land on the homestead list. Submitted November 17, 1904. (Docket No. 197.) Writ denied December 14, 1904.

*John H. Killmaster* (*H. K. Gustin* and *De Vere Hall*, of counsel), for relator.

*Charles· A. Blair*, Attorney General (*Charles W. McGill* and *E. Stenberg*, of counsel), for respondents.

Hooker, J. The board of supervisors of Alcona county filed the petition in this case, asking a mandamus to restrain the auditor general and commissioner of the State land office from conveying 60,000 acres of land in that county under the provisions of the State tax homestead law, and to treat it as subject to purchase under the general rule applicable to such lands. A deed to the State of a portion of these lands had been made by the auditor general, and the petition alleges an intention to convey the remainder.

This action was taken under the following provisions of

the general tax law as amended by Act No. 107, Pub. Acts 1899:

"SEC. 127. Lands delinquent for taxes for any five years, where said lands have been sold and bid off to the State, for the taxes of one or more of the said years, and then so held, and no application having been made to pay, purchase, or redeem the said lands for said taxes, and no action pending to set aside such taxes or to remove the cloud occasioned thereby, shall, within the meaning of this act, be deemed abandoned lands, unless such lands are actually occupied by the person having the record title thereto. Any lands delinquent for taxes for a period of five or more years, and said lands having been sold and bid in by the State and held by the State for the taxes of any of said years, and no application having been made to pay, redeem, or purchase the same, and no suit pending to set aside said taxes or remove the cloud from the title occasioned thereby, shall be subject to the provisions of this section. Whenever it shall appear by the records in the auditor general's office that any lands are delinquent for taxes for five years or more and that said lands have been bid off to the State one or more times by reason of such delinquent taxes, and that the time of redemption of such sale or sales has expired, and that no application has been made to pay, to redeem or purchase the same, and it shall appear that no action is pending in the circuit court of the county where said lands are situated to set aside the taxes or remove the cloud on the title occasioned thereby, the title to the State shall be deemed absolute in and to said lands; and it shall be the duty of the auditor general and the commissioner of the State land office to cause an examination of such lands to be made as soon as practicable, to ascertain their value and if abandoned. Upon the examiner filing a certificate as to said examination and the occupancy of said premises, and the certificate of the county clerk of the county where said lands are situated, in the office of the auditor general, showing that no suit is pending in said county to set aside any of said taxes or remove the cloud occasioned thereby, the auditor general and the commissioner of the State land office shall determine what lands so examined come within the provisions of this section, and record their determination in a book to be kept in the office of the auditor general for that purpose. The finding and determination of the auditor

general and the commissioner of the State land office shall show:

"*First.* A description of said lands.

"*Second.* The years for which they have been returned delinquent for taxes.

" *Third.* The time or times bid off to the State, and the taxes for which said bid was made.

"*Fourth.* Whether said lands are occupied or abandoned.            *

" *Fifth.* Whether or not any suit is pending in the county where said lands are situated to set aside the taxes, or any of them, or to remove the cloud occasioned thereby.

" The determination of the auditor general and commissioner of the State land office in that regard shall be deemed to be conclusive as to the facts therein stated, unless suit is instituted to vacate the same within six months, as hereinafter provided. Within ninety days after such determination the auditor general shall make a transfer by deed of all lands so determined by the auditor general and said commissioner of the State land office to come within the provisions of this section to the State of Michigan as to an individual, as provided in section seventy-two of this act so far as said section is applicable. Said deed or deeds shall be delivered to the commissioner of the State land office, who, after having said deed or deeds recorded in the register of deeds' office, of the county where the lands are situated, shall file the same in his office. Upon the execution and delivery of said deed or deeds to the commissioner of the State land office, said commissioner shall hold said lands as State lands, subject to the provisions hereinafter contained. And no suit shall be instituted to vacate, set aside, or annul the said determination of the said auditor general and the commissioner of the State land office made as aforesaid unless instituted within six months after the determination aforesaid. Any person desiring to file a bill or institute a suit to vacate the findings of the auditor general and commissioner of the State land office, as provided in this section, shall first pay to the auditor general all delinquent taxes returned to the auditor general on the lands in question, together with all interests, costs, and charges, and shall purchase and pay for all bids and titles held by the State to such lands by paying therefor the annual bid by the State and all interest and legal charges thereon, as provided in section eighty-four of this act. The money so received by the

auditor general shall be paid into the general fund of the State, and in case the determination of the auditor general and commissioner of the State land office should be set aside and held for naught, and the taxes, or any portion thereof, shall be adjudged invalid for any of the reasons set forth in section seventy-six of this act, then in such case the auditor general shall return to the person entitled thereto such taxes, or any portion thereof, as shall be so adjudged invalid for the reasons aforesaid, and in case the title is held valid the money so received shall be divided between the State, county, and township pro rata according to the taxes paid, the same as in other cases. Any suit instituted for the purpose of setting aside the determination aforesaid may be commenced in the circuit court of the county of Ingham. It is hereby made the duty of the county clerks of the several counties of this State, on inquiries by the auditor general, to furnish to said auditor general a certificate showing whether or not any such suit is pending in the circuit court of the counties, as above referred to, relating to any lands described and referred to in the inquiry of the auditor general."

"SEC. 130. All taxes charged against such lands in the office of the auditor general at the time they are deeded to the State shall be canceled, but no part of such taxes due to the township or county shall be charged to the State, but the State, county, and township respectively shall bear the share of loss on such taxes that properly belongs to each."

Section 131 provides that all such lands shall be held by the commissioner, subject to entry as homestead lands, unless withheld and reserved for sale in a manner pointed out therein.

Acting under the provisions mentioned, the auditor general and commissioner selected one Chapin to examine the lands in question, which he did, availing himself of the services and knowledge of one Mr. Chappel, who was county surveyor of Alcona county at the time. They furnished Chapin with a list of the lands, and with blanks with ruled spaces for tabulating the descriptions and notes of the facts required to appear in the examiner's reports; and on August 13, 1902, Chapin made the report following, which was in writing, and appears on one or more of the sheets or folios mentioned. It is as follows:

"LANSING, MICH., Aug. 13, 1902.

"I hereby certify that I have examined the lands described in the within statement and that the facts stated therein as to the occupancy or abandonment of said lands and as to their value and all other facts stated therein as to the character of said lands and the improvements or timber thereon are true of my own knowledge. I further certify that the within statement as to the title to said lands is made from the best information I could procure from the occupants (where said lands were occupied) or from inquiries in the vicinity.

"C. T. CHAPIN,
"Examiner."

Thereupon these folios were sent to the county clerk of Alcona county, who appended his certificate as follows, viz. :

"HARRISVILLE, MICH., Sept. 17, 1902.

"I, George Rutson, county clerk of the county of Alcona, hereby certify that I have examined the record and files in my office and find that no action is pending to set aside any taxes against any of the land described herein or to remove the cloud occasioned by any of said taxes or by any sale therefor.

"In testimony whereof, I have hereunto affixed my signature and the seal of the circuit court for said county.

"GEORGE RUTSON,
"County Clerk of Alcona County."

The auditor general indorsed a certificate of which the following is a copy:

"STATE OF MICHIGAN.
"AUDITOR GENERAL'S DEPARTMENT.
"LANSING, Sept. 23, 1902.

"I hereby certify that the lands herein described are delinquent for taxes for five or more years, as appears by the within statement, and that said lands have been sold and bid off to the State for the taxes of one or more of the said years, as appears by said statement, and are now so held, and that no application has been made to pay said taxes or to purchase or redeem said lands from sale for said taxes. I further certify that the time of redemption

from the sale or sales shown in the within statement has expired as to all such sales except such sales as were made for the taxes of ———— in the year 19—.

"Perry F. Powers,
"Auditor General."

On September 23, 1902, the auditor general and land commissioner appended the following determination, viz.:

"State of Michigan.
"Lansing, Sept. 23, 1902.

"We hereby certify that we have caused an examination to be made of the within described lands by C. T. Chapin, to ascertain their value and if abandoned, and that said examiner has filed in the office of the auditor general a certificate as to said examination and the occupancy of said premises, and the certificate of the county clerk of the county where said lands were situated, showing that no suit is pending in said county to set aside any of said taxes or remove the cloud occasioned thereby.

"We further certify that having examined and duly considered the report of said examiner, the certificate of said county clerk, and the records of the auditor general's department, we have determined that said lands herein described come within the provisions of section 127 of Act 206 of the Public Acts of 1893, as amended by Act 107 of the Public Acts of 1899.

"We hereby find and determine that the descriptions of land included in this determination (being the descriptions entered on the preceding pages of this sheet) the years for which said lands have been returned delinquent for taxes, the time or times that said lands were bid off to the State and the taxes for which said bid or bids was or were made, the facts as to whether said lands are occupied or abandoned and whether or not any suit is pending in the county where said lands are situated to set aside the taxes or any of them or to remove the cloud occasioned thereby, are as appear in the statement to which this certificate is affixed.

"Perry F. Powers,
"Auditor General.
"Edwin A. Wildey,
"Commissioner of State Land Office."

And later the following formal order of withdrawal of the land was made:

138 Mich.—32.

"LANSING, MICHIGAN, January 19, 1903.

"By virtue of the authority conferred upon us by Act No. 141 of the Public Acts of Michigan for the year 1901, we do hereby withdraw from homestead entry the foregoing list of lands recently deeded to the State of Michigan by the auditor general under the provisions of Act No. 206 of the Public Acts of Michigan for the year 1893, and acts amendatory thereto.

"PERRY F. POWERS,
"Auditor General.
"EDWIN A. WILDEY,
"Commissioner of the State Land Office."

The relator's petition was verified on March 4, 1903, and subsequently filed in this court. An issue was framed upon certain questions of fact, reserving the question of materiality. The issue was sent to the circuit court for the county of Ingham, and is returned to us with a stipulation as to some of the questions and findings by the circuit judge upon others.

The relator has discussed the case under the following four heads:

"1. The determination of the auditor general made on the 23d day of September, 1902, being Exhibit E of the petition, does not show that no actions were pending in the circuit court to set aside the taxes, or remove the cloud on the title occasioned thereby. Does not show that the lands are delinquent for five or more years, or that they had been bid off to the State one or more times by reason of such delinquent taxes.

"2. The determination of the auditor general and commissioner of land office, made on the 23d day of September, 1903, being Exhibit F of the petition, does not show the years for which the lands were returned delinquent for taxes, or the time or times bid off to the State, or the taxes for which such bid or bids were made.

"3. The determination of the auditor general and commissioner of land office, last above, was not reported in a book kept in the office of the former for that purpose, within the contemplation of said section 127.

"4. The examination made by Examiner Chapin was before any action was taken looking to the transfer of said lands from the State tax to the homestead tax list, and his

certificate, made on the 13th day of August, 1902 (being Exhibit D of the petition), refers to conditions of a time other than required by said section 127."

Relator's counsel take the position that the first, and a jurisdictional act, is a determination by the auditor general, of the list of lands to be submitted to himself and the land commissioner, which determination, it is said, must be in writing, and show the following facts to be of record in the auditor general's office: (*a*) The descriptions; (*b*) delinquency for five years; (*c*) bid in by State and held for the taxes of one or more of said years; (*d*) that no application has been made to redeem or purchase them; (*e*) that no suit is pending, etc.

As appears from the foregoing quotation of said section 127, lands possessing the aforesaid requisites are made subject to the provisions of said section, which provides further that, whenever the first four of these appear from the records of the auditor general's office (the other requirement is that *if it shall appear* that no action is pending, etc.), the title of the State *to the land shall be deemed absolute.* The section is silent as to any determination in writing of these facts by the auditor general. Manifestly he must, in a sense, determine them when the list is made. Said determination is not essential to make the title absolute in the State. If the statute makes any change in the title, it is by operation of law. At one stage of the proceedings the auditor general did make a certificate of these facts, and we understand that there is no dispute over the existence of these records in the auditor general's office at the time these proceedings were begun, unless it be with relation to the pendency of suits, which, in our view of the case, could not conclusively appear there, as such proceedings are subject to discontinuance at any moment, even if reported to the auditor general. This disposes of the first question raised.

Our conclusion as to the first proposition practically determines the fourth, the point to which seems to be that the appointment of an examiner was not authorized, be-

cause of the omission of the auditor general to previously make a formal determination regarding the list submitted to the examiner. The examiner was appointed by the two officers, and by them furnished with a list of the lands, showing that the auditor general had selected the lands to be considered, which, in the nature of things, must have been so.

The third relates to the record of determination in a book. Whatever final determination of facts the law requires is recorded only in the folios. Of this it is sufficient to say that the finding of the circuit judge shows that upon the return of the sheets (folios) the auditor general and commissioner signed the certificates (of determination) on the outside sheet of the roll of lands, and such outside sheet was in all respects treated as the cover to said roll, and said certificate was intended to and did relate to all of the lands described therein. We think that, when this was filed in the office of the auditor general, it was a substantial compliance with the requirement.

The second point relates to the determination. It will be seen that the statute provides that such determination shall show certain facts under five heads. Of these, all but the second and third are clearly included. The second calls for a statement of the years for which the respective lands have been returned delinquent. The third calls for the time or times the land has been bid off to the State, and the taxes for which the bid was made. The record shows a proper certificate in form, and it would be a complete compliance had the folios contained these facts. The certificate of the auditor general does show that the lands were delinquent for more than five years, and that the lands had been bid off by the State for taxes of one or more of said years; that they were so held, and no application to purchase or redeem had been made. Apparently it was expected that the folio would contain the specific information which was admittedly matter of record. This was evidently a clerical omission, and one which could have had no effect upon the determination, and may prop-

erly be disregarded, even if we may not say that the entire requirement is directory, which we do not decide.

Counsel discuss another question; e. g., that the examiner did not faithfully perform his duties as to some of the land; (2) that suits were actually pending as to some parcels. A somewhat full consideration was given this statute in the case of *Semer* v. *Auditor General*, 133 Mich. 569, where it was held that the finding of facts by the commissioner was final, and the same rule should be applied here.

Again, it must be assumed that these lands belonged to the State, and no one seems to question it. The county intervenes upon the assumption that it has some interest in the nature of vested rights as against the State, temporary at least, under existing laws, and may therefore resort to legal proceedings to compel the State officers to conform to the strict requirements of the law in their disposition of its land. The county is no more than an agency of the State government, and it may be open to serious question whether it has any duty of supervision of State affairs, except as specially conferred; but, however that may be, the record in this case fails to show that it, as a county, has a strict legal right to the relief it asks, which justice requires should be vindicated.

It is clear that in all particulars save one, perhaps, the conditions exist which the statute makes necessary to the setting aside of these State lands for future private sale at such prices as the auditor general and commissioner fix, when it is deemed best to again place them upon the market. The only exception is the lands open to the question of pendency of suits. As to these, the answer signifies an intention not to include such lands, if there be any, and action is therefore unnecessary, if it be competent, so far as such lands are concerned. That being true, we think the writ should not issue, and it will be denied.

The other Justices concurred.